# EXHIBIT A



1   Torrance L. Coburn
2   TIPP & BULEY, P.C.
    2200 Brooks St
3   P.O. Box 3778
4   Missoula, MT 59806-3778
    Phone: (406) 549-5186
5
6       Attorney for Plaintiff

7       **MONTANA FOURTH JUDICIAL DISTRICT COURT,**
8                    **MISSOULA COUNTY**

9   SAMANTHA LASORTE,               Case No.: DV-12-452
                                    Dept. No.:  2
10          Plaintiff,
                                    Robert L. Deschamps, III
11      vs.                             **SUMMONS**

12
13  LLOYD'S OF LONDON and
    LLOYD'S AMERICA, INC.,
14
15          Defendants.

16  **THE STATE OF MONTANA SENDS GREETINGS TO THE ABOVE-**
    **NAMED DEFENDANT:** Lloyd's America, Inc.
17
            **YOU, THE DEFENDANT, ARE HEREBY SUMMONED** to answer the
18
    Complaint in this action which is filed in the office of the above-named Court, a
19
    copy of which is herewith served upon you, and to file your answer and serve a
20
    copy thereof upon Plaintiff's attorney within 21 days after the service of this
21
    summons, exclusive of the day of service; and in case of your failure to appear or
22
    answer, judgment will be taken against you by default, for the relief demanded in
23
    the Complaint.
24
            GIVEN under my hand this _18_ day of April, 2012.
25                                      Shirley E. Faust
26                                      CLERK OF COURT
27  SE (Seal)                    By: _Bobbi Hamline_
28                                      Deputy Clerk

                        SUMMONS – 1

COPY

Torrance L. Coburn
TIPP & BULEY, P.C.
Attorneys at Law
2200 Brooks St
P.O. Box 3778
Missoula, MT 59806-3778
Phone: (406) 549-5186

Attorney for Plaintiff

## MONTANA FOURTH JUDICIAL DISTRICT COURT, MISSOULA COUNTY

| | |
|---|---|
| SAMANTHA LASORTE, | Case No.: DV-12-452 <br> Dept. No.: 2 |
| Plaintiff, | |
| | **COMPLAINT and** |
| vs. | **DEMAND FOR TRIAL BY JURY** |
| LLOYD'S OF LONDON and <br> LLOYD'S AMERICA, INC., | |
| Defendants. | |

COMES NOW the Plaintiff, Samantha LaSorte, by and through counsel of TIPP & BULEY, P.C., and for her Complaint against the Defendants, states and alleges as follows:

    1.   Plaintiff is an individual who resides in Missoula, Montana.

    2.   Defendant Lloyd's of London is a corporation doing business in Montana. Defendant Lloyd's America, Inc. is a corporation organized under the laws of the State of New York and is doing business in Montana.

    3.   That from October 1, 2008 through October 1, 2010, the Defendants insured Real Estate Client Referrals, LLC ("RECR"). To the best of Plaintiff's knowledge, the insurance provided by the Defendants remains in full force and effect.

COMPLAINT and DEMAND FOR TRIAL BY JURY - 1

4.    That the insurance policies provided by the Defendants to RECR insured and indemnified RECR, against, among other things, any and all liability for claims made by RECR's employees and past employees. Said insurance policies provided by the Defendants to RECR are Policy No. 1115NAPI08111970 and 1115NAPI09111970.  True and correct copies of the policies are attached hereto and marked Exhibit A and B respectively, and by reference are fully included herein.

5.    That while RECR was covered and insured by the Defendants, RECR discriminated against the Plaintiff in the area of her employment based upon her sex.  As a result of RECR's discrimination, the Plaintiff suffered actual and monetary damages in the amount of $210,000.00.

6.    Plaintiff brought an action in the Montana Fourth Judicial District Court for recovery against RECR for the damages suffered by the Plaintiff as a result of RECR's discrimination.

7.    RECR entered into and executed a *Consent to Entry of Judgment*, in which it stipulated and agreed that the Plaintiff was entitled to judgment against it for damages in the amount of $210,000.00 together with interest accruing at the legal rate from March 10, 2010 until paid.  A true and correct copy of the *Consent to Entry of Judgment* is attached hereto and marked Exhibit C, and by reference is fully included herein.

8.    RECR has assigned all of its right, title and interest that it had as an insured of the Defendants, and also as a party to a contract of insurance with the Defendants, to the Plaintiff.  A true and correct copy of the *Settlement Agreement and Assignment of Claims* is attached hereto and marked Exhibit D, and by reference is fully included herein.

9.    That RECR has performed all of the conditions required by the insurance policies.

COMPLAINT and DEMAND FOR TRIAL BY JURY - 2

10.    That in breach of the terms of the policies RECR held with the Defendants, the Defendants has failed and refused to pay any part of the above-described damages caused by the discrimination of RECR.

11.    Pursuant to the assignment executed by RECR, Plaintiff is entitled to recovery from the Defendants for the damages she suffered as a result of RECR's discrimination.

WHEREFORE, Plaintiff prays for relief as follows:

A.    For judgment against the Defendants in the amount of $210,000.00, together with interest accruing at the legal rate from July 1, 2010 until paid;

B.    For Plaintiff's costs and attorney's fees incurred in this action; and,

C.    For such other and further relief as this Court deems just, equitable and allowable under the laws of the State of Montana.

DATED this 17th day of April, 2012.

TIPP & BULEY, P.C.

Torrance L. Coburn
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, by and through her attorneys TIPP & BULEY, P.C., and demand a jury trial on all issues of fact in the above case.

DATED this 17th day of April, 2012.

TIPP & BULEY, P.C.

Torrance L. Coburn
Attorney for Plaintiff

COMPLAINT and DEMAND FOR TRIAL BY JURY - 3



# Lloyd's Policy

**We, Underwriting Members** of the Syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as 'the Underwriters'), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the Premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy.

**The Underwriters** hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his Executors and Administrators) shall be liable only for his own share of his Syndicate's proportion of any such Loss and of any such Expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date or reference shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.

*R.C. Thosmen*

**LLOYD'S POLICY SIGNING OFFICE**
General Manager



If this policy (or any subsequent endorsement) has been produced to you in electronic form, the original document is stored on the Insurer's Market Repository to which your broker has access.

J(A)  NMA2421 (3/1/95)  Form approved by Lloyd's Market Association

# PROFESSIONAL EMPLOYER ORGANISATION'S EMPLOYMENT PRACTICES INSURANCE CLAIMS FIRST MADE AND REPORTED

## COVERAGE OPTION D:

NOTICE: This Coverage is Provided on a Claims Made and Reported Basis. Except to such extent as may otherwise be provided herein, the coverage afforded under this insurance policy is limited to liability for only those covered Claims that are first made against an Insured and reported to us while the insurance is in force. LIMIT OF LIABILITY shall be reduced and may be completely exhausted by payment of Defense Costs. Please review the coverage afforded under this insurance policy carefully and discuss the coverage hereunder with your insurance agent or broker.

In consideration of the payment of a premium, this policy covers Discrimination, Harassment and/or Inappropriate Employment Conduct liability within the terms, conditions, limitations and exclusions set forth in this policy. It has been issued in reliance upon all statements made to us in the application and any attachments and all other information provided to us. The application and attachments are incorporated herein and form a part of this policy.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.

Under this policy the words "we", "us" and "our" refer to the underwriters providing this insurance.

The word "Insured" means any person or organization qualifying as such under WHO IS INSURED.

READ THIS POLICY CAREFULLY TO DETERMINE THE EXTENT OF COVERAGE. IMPORTANT: THIS IS A CLAIMS FIRST MADE AND REPORTED POLICY WHICH INCLUDES COSTS OF DEFENSE WITHIN THE LIMIT OF LIABILITY.

## I. COVERAGE WHAT IS COVERED

A. We will pay Loss amounts that an Insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. However, the amount we will pay is limited as described in the LIMIT OF LIABILITY and SELF INSURED RETENTION sections of this policy.

B. This policy applies only if:

    (1) A Claim is first made against an Insured in accordance with WHEN COVERAGE IS PROVIDED;

    (2) The Claim is first reported in accordance with WHEN COVERAGE IS PROVIDED and CONDITIONS section IX.A, Duties in the event of a Claim; and

    (3) A Claim is first made against an Insured in accordance with WHERE COVERAGE IS PROVIDED.

C. Defense. We have the right and duty to defend any Claim for an Insured Event made or brought against any Insured to which this policy applies. We will give consideration to your preference for defense counsel, however the final decision rests with us. We have no duty to provide other services or take any action. Our duty to defend any Claim ends when the LIMIT OF LIABILITY that applies have been exhausted, and in such event, the Named Insured shall, upon notice from us, promptly take over control of the defense.

We have the right to investigate and to settle any Claim for an Insured Event, in the manner and to the extent that we believe is proper, contingent upon the consent of the Named Insured as defined in this policy. This includes the right to agree to post a notice of compliance, provided such notice does not contain an admission of liability.

You may take over control of any outstanding Claim previously reported to us only if we both agree that you should, if required under law or if a court orders you to do so.

If your LIMIT OF LIABILITY is exhausted, we will notify you of all outstanding Claims so that you can take over control of their defense. We will help transfer control to you.

D.   During the transfer of control. We agree to take whatever steps are necessary to continue the defense of any outstanding Claim and avoid a default judgment during the transfer of control to you. If we do so, you agree to pay reasonable expenses we incur for taking such steps after the **LIMIT OF LIABILITY** is exhausted.

E.   Duty to pay. We have the duty to pay any Loss that results from any Claim for an Insured Event made or brought against any Insured to which this policy applies. Our duty to pay ends when the available **LIMIT OF LIABILITY** has been exhausted. We will not pay more than the applicable **LIMIT OF LIABILITY**.

.We have the duty to pay Defense Costs incurred for the defense of any Claim that is controlled by us. Payment of Defense Costs are included in the **LIMIT OF LIABILITY**, they are not in addition to the **LIMIT OF LIABILITY**.

F.   Consent To Settle. We will not settle any Claim without your consent. If you refuse to consent to any settlement recommended by us or our Authorized Representatives and you elect to contest or continue any legal proceedings, then our liability shall not exceed the amount for which the Claim could have been settled including Defense Costs incurred with our consent, up to the date of such refusal.

## H.   EXCLUSIONS: WHAT IS NOT COVERED

A.   **Worker's Compensation.** This policy does not cover any Loss arising out of any Claim alleging violation of any worker's compensation, disability benefits or unemployment compensation law, social security and other employment benefit law, or any similar law. This exclusion does not apply to any Claim for retaliation, Discrimination and/or Inappropriate Employment Conduct on account of the filing of a worker's compensation claim, a claim for disability benefits, a claim for unemployment compensation, or a claim under any similar law except for retaliation claims brought under ERISA, OSHA, and other laws which are specifically excluded from coverage by this policy.

B.   **Contractual Liability.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim any Insured is obligated to pay by reason of the assumption of another's liability for an Insured Event in a contract or agreement. This exclusion will not apply to liability for damages because of an Insured Event that any Insured would have without the contract or agreement. This exclusion shall not apply to liability assumed under a Client Service Agreement otherwise covered by this policy.

C.   **Employee Retirement Income Security Act.** This policy does not cover any Loss arising out of any Claim alleging violation of the Employee Retirement Income Security Act of 1974 Public Law 93-406, or any amendments thereto, or any similar federal, state or local law, rule or regulation.

D.   **Strikes And Lockouts.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim arising out of a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes, collective bargaining agreements or labor negotiations or any protections contained within the National Labor Relations Act, or any related federal law or similar state or local law or rule or regulation.

E.   **Consequential Loss.** This policy does not cover any Loss resulting from or attributable to any allegations made by or solely for the benefit of a claimant's domestic partner, spouse, child, parent, brother or sister.

F.   **Worker's Adjustment and Retraining Notification Act.** This policy does not cover any Loss arising out of any Claim alleging violation of the Worker's Adjustment and Retraining Notification Act, Public Law 100-379 (1988) or any amendments thereto, the W.A.R.N. Interpreting Regulations, or any similar federal, state or local law, rule or regulation.

G.   **Fair Labor Standards Act.** This policy does not cover any Loss arising out of any Claim alleging violation of the Fair Labor Standards Act of 1938 (except the Equal Pay Act), or any amendments thereto, or any similar federal, state or local law, rule or regulation.

H.   **Occupational Safety and Health Act.** This policy does not cover any Loss arising out of any Claim alleging violation of the Occupational Safety and Health Act of 1970 (29 U.S.C. 651, et seq.), or any amendments thereto, or any similar federal, state or local law, rule or regulation.

I. **Consolidated Omnibus Budget Reconciliation Act.** This policy does not cover any Loss arising out of any Claim alleging violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, or any amendments thereto, or any similar federal, state or local law, rule or regulation.

J. **Downsizing, Reduction in Force or Change in Number of Employees.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim which arises out of any reorganization, restructuring, reduction in force, change in number of Employees, downsizing operations or closure of one or more plants or places of business operations which results in the termination, or other change in employment terms, within any 60 day period of more than 10% of the total number of Staff Employees measured at the inception of the policy, or five (5) Staff Employees, whichever is the greater. However, this exclusion shall not apply if prior to such downsizing, reorganization, restructuring, reduction in force, change in number of Employees or closure, the Insured consulted with and followed the recommendation of legal counsel experienced in employment law.

K. **Wage and Hour Law.**

   1. **Multiple Claimant or Multiple Plaintiff and Class Actions.** This policy does not cover any Claim brought by or on behalf of multiple claimants or multiple plaintiffs, including class action suits based upon, arising out of, directly or indirectly in connection with, related to, or in any way alleging violation of any federal, state or local wage and hour law, regardless of whether any such Claim also includes allegations otherwise covered by this policy.

   2. **Individual Claimant or Plaintiff.** This policy does not cover any Loss arising out of a Claim by an individual claimant or plaintiff alleging violation of any federal, state or local wage and hour law, however, in the event such Claim also alleges an Insured Event otherwise covered by this policy, notwithstanding the provisions of section I C, Defense, and subject to all other terms, conditions and exclusions contained in this policy, we agree to pay Loss solely for that portion of the Claim involving such Insured Event.

L. **Stock Options.** This policy does not cover any Loss resulting from or attributable to stock options, including, without limitation, 1) the failure to grant stock options and/or 2) amounts attributable to unvested stock options which options did not vest because of the actual or alleged wrongful termination of an Employee.

M. **Fraud and Collusion.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim alleging fraud or collusion by an Insured. Without limiting the foregoing, we will pay Defense Costs incurred relating to allegations of fraud and collusion to defend an innocent Insured named in such Claim so long as such Claim also contains allegations against that innocent Insured involving an Insured Event otherwise covered by this policy.

N. **Prior Knowledge.** This policy does not cover any Loss arising out of Insured Events of which any Insured who is a principal, partner, officer, director, trustee, in-house counsel, Employee(s) within the HR and Risk Management department or Employee(s) with personnel and risk management responsibilities was aware by actual knowledge of the facts or circumstances of such Insured Events prior to the Prior Knowledge date, as shown in the Declarations.

O. **Prior Notice.** This policy does not cover any Loss arising out of Insured Events which have been the subject of any notice given under any other policy prior to the inception date of this policy.

P. **Financial Impairment.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving the Financial Impairment of any Insured.

Q. **Client Company Prior Acts.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim alleging Insured Events against a Client Company which happened or first commenced on or before the Client Company signed the Client Service Agreement.

R. **Punitive Damages.** This policy does not cover any Loss arising out of any fines, penalties, punitive damages, exemplary damages or any additional damages resulting from the multiplication of compensatory damages.

**III.**   **WHEN COVERAGE IS PROVIDED**

**A.**   This policy applies only to Claims arising out of an Insured Event first made or brought during the Policy Period and which are reported to us during the Policy Period, or during the Limited Reporting Period where applicable. Claims are considered to be first made on the date the Claim is made and not the date any Insured is served or first receives notice of a Claim.

All Claims because of One Insured Event will be considered to have been made or brought on the date that the first of these Claims was first made or brought.

Limited Reporting Period means the thirty (30) day period after the policy ends, during which Claims first made or brought during the Policy Period can be reported.

**B.**   Extended Reporting Period. If we cancel or non-renew this policy, except for non-payment of premium, an Extended Reporting Period of twelve (12) months, can be added by means of an Extended Reporting Period Endorsement along with the payment of an additional Premium.

The Extended Reporting Period Endorsement will not be issued unless we receive a written request for it within fifteen (15) days after this policy is canceled or non-renewed, nor will it take effect unless the additional Premium is paid within thirty (30) days after this policy is canceled or nonrenewed. Once that Premium is paid the endorsement may not be canceled and the additional Premium will be fully earned.

The additional Premium for the Extended Reporting Period Endorsement will be one hundred percent (100%) of the Premium charged for the original Policy Period.

The quotation by us of a different Premium or Self Insured Retention or Limits of Liability or changes in policy language for the purpose of renewal shall not constitute non-renewal by us.

However, the Extended Reporting Period will not apply to any Claim if other insurance you buy covers you or would cover you if its limits of coverage had not been exhausted.

Coverage under the Extended Reporting Period is with respect to Claims first made against an Insured during the Policy Period or Extended Reporting Period and first reported by an Insured during the Extended Reporting Period, provided always that Claims reported during the Extended Reported Period are limited to Insured Events which happen or commence before the original Policy Period ends by either cancellation or non-renewal and which are otherwise covered by this policy.

The LIMIT OF LIABILITY that applies at the end of the Policy Period is not renewed or increased and the Limits, as shown in the Declarations, shall not be increased in any way by the Limited Reporting Period or the addition of the Extended Reporting Period.

**C.**   If, during the Policy Period, any of the following changes occurs:

   **1.**   the acquisition of an Insured, or of all or substantially all of its assets, by another entity, or the merger or consolidation of an Insured into or with another entity such that the Insured is not the surviving entity;

   **2.**   the Financial Impairment of an Insured; or

   **3.**   the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate over fifty percent (50%) of the directors of an Insured;

coverage under this policy will continue in full force and effect with respect to Claims for Insured Events or, if purchased, Third Party Insured Events committed before such change, but coverage will cease with respect to Claims for Insured Events or, if purchased, Third Party Insured Events committed after such change. After any such change, this policy may not be cancelled, regardless of CONDITIONS section VIII.F. Cancellation, and the entire Premium for the policy will be deemed fully earned.

**IV.**   **WHERE COVERAGE IS PROVIDED**

This policy covers Claims brought in the Coverage Territory for Insured Events that happen anywhere in the world. Coverage Territory means the United States of America, its territories and possessions, and Canada.

## V.   WHO IS INSURED

A.   **Individual.** If you are shown in the Declarations as an individual, you and your spouse are Insureds but only for the conduct of a business of which you are the sole owner.

B.   **Corporation.** If you are shown in the Declarations as a corporation or organization other than a partnership or joint venture, you are an Insured. Your stockholders are also Insureds, but only with respect to their liability as your stockholders.

C.   **Partnership or Joint Venture.** If you are shown in the Declarations as a partnership or joint venture, you are an Insured. Your partners or co-venturers and their spouses are also Insureds, but only for the conduct of your business.

However, no person nor organization is covered for the conduct of any current or past partnership or joint venture not named in the Declarations.

D.   **Employees.** Your Employees, executive officers, directors and your trustees are Insureds only for the conduct of your business within the scope of their employment. Your Employee's status as an Insured will be determined as of the date of the Discrimination, Harassment and/or Inappropriate Employment Conduct which caused the Insured Event.

E.   **Acquisitions.** Any organization that you newly acquire, or form while this policy is in effect is an Insured, if you own at least fifty one percent (51%) of it. However, no newly acquired or formed organization is covered for more than forty five (45) days or the remainder of the Policy Period, whichever is less, from the date acquired or formed unless we agree to cover such acquisition or newly formed organization within such forty five (45) day period in consideration of an additional premium to be determined by us. Notwithstanding the foregoing, any acquired or formed organization is neither covered for Loss that results from an Insured Event that happened or first commenced before the Insured acquired or formed it; nor for Loss covered under any other insurance.

This paragraph does not apply to a partnership or joint venture. Nor does it apply to any organization once it is shown in the Declarations of this policy.

F.   **Client Companies.** Client Company employees, executive officers and directors leased from the Named Insured are Insureds only for the conduct of the Client Company's business within the scope of their employment. Client Company employee's status as an Insured will be determined as of the date of the Discrimination, Harassment and/or Inappropriate Employment Conduct, which caused the Insured Event.

## VI.   LIMIT OF LIABILITY

A.   The limits shown in the Declarations of this policy and the information contained in LIMIT OF LIABILITY establish the most we will pay regardless of the number of Insureds or Claims made.

B.   **Each Insured Event Limit.** This is the most we will pay for Claims first made or brought against the Named Insured, as shown in the Declarations, during the Policy Period for Loss that results from any One Insured Event regardless of the number of Claims.

C.   **Total Aggregate Limit.** This is the most we will pay for the combined total of all Claims first made or brought against the Named Insured, as shown in the Declarations, during the Policy Period for Loss that results from all Insured Events.

D.   **Client Company Each Insured Event Limit.** This is the most we will pay for Claims first made or brought against a Client Company during the Policy Period for Loss that results from any One Insured Event regardless of the number of Claims.

E.   **Client Company Total Aggregate Limit.** This is the most we will pay for the combined total of all Claims first made or brought against a Client Company during the Policy Period for Loss that results from all Insured Events.

F.   **Multiple Client Companies Each Insured Event Limit.** This is the most we will pay for Claims first made or brought against more than one Client Company during the Policy Period for Loss that results from any One Insured Event regardless of the number of Claims.

G.      How the LIMIT OF LIABILITY applies to an extension of the Policy Period. If this Policy Period is extended, the Limits, as shown in the Declarations shall not in any way increase. For purposes of the LIMIT OF LIABILITY, any policy extension is considered to be part of and not in addition to the former Policy Period.

**VII.     HOW COVERAGE LIMITS AND SELF INSURED RETENTIONS ARE APPLIED TO CLAIMS INVOLVING CLIENT COMPANIES**

When a Claim is made solely against a Client Company the Client Company Any One Insured Event amount, as shown in the Declarations, shall apply first, when exhausted the Client Company Each Insured Event amount, as shown in the Declarations, shall apply, subject to the LIMIT OF LIABILITY.

When a Claim is made against a Client Company and the Named Insured the Any One Insured Event amount, as shown in the Declarations, shall apply first, when exhausted the Client Company Each Insured Event amount, as shown in the Declarations, shall apply, subject to the LIMIT OF LIABILITY. Should the Loss exhaust the Client Company Total Aggregate Insured amount, as shown in the Declarations, the Each Insured Event amount, as shown in the Declarations, shall apply, subject to the LIMIT OF LIABILITY.

When a Claim is made against more than one Client Company the Any One Insured Event amount, as shown in the Declarations, shall apply first, when exhausted the Multiple Client Companies Each Insured Event amount, as shown in the Declarations, shall apply.

When a Claim is made against the Named Insured and more than one Client Company the Any One Insured Event amount, as shown in the Declarations, shall apply first, when exhausted the Each Insured Event Insured amount, as shown in the Declarations, shall apply, subject to the LIMIT OF LIABILITY.

**VIII.     SELF INSURED RETENTION**

Our obligations to pay under this policy applies only to the amount of Loss in excess of any Self Insured Retention amount, as shown in the Declarations, and the LIMIT OF LIABILITY will not be reduced by the amount of such Self Insured Retention.

The Self Insured Retention amount will apply, separately to each Claim made, however, it will only apply once to all Claims arising out of any One Insured Event regardless of the number of claimants who allege damages.

**IX.     CONDITIONS**

We have no duty to provide coverage under this policy unless there has been full compliance with all the conditions contained in this policy.

A.     Duties in the event of a Claim

1.     You must see to it that we or our Authorized Representatives, as shown in the Declarations, are notified as soon as practicable, but in no event more than thirty (30) days after any Insured who is a principal, partner, officer, director, trustee, in-house counsel, Employee(s) within the HR and Risk Management departments or Employee(s) with personnel and risk management responsibilities, becomes aware that a Claim has been made. Your report should include:

   (a)     the identity of the person(s) alleging Discrimination, Harassment, and/or Inappropriate Employment Conduct;

   (b)     the identity of any Insured(s) who allegedly committed the Discrimination, Harassment and/or Inappropriate Employment Conduct;

   (c)     the identity of any witnesses to the alleged Discrimination, Harassment and/or Inappropriate Employment Conduct; and

   (d)     the date(s) the Insured Event took place.

2.     You and any other Insured must:

   (a)     immediately send us or our Authorized Representatives, as shown in the Declarations, copies of any demands, notices, summonses or legal papers received in connection with the Claim;

(b)   authorize us or our Authorized Representatives, as shown in the Declarations, to obtain statements, records and other information;

(c)   co-operate with us or our Authorized Representatives, as shown in the Declarations, in the investigation or defense of the Claim; and

(d)   assist us or our Authorized Representatives, as shown in the Declarations, in the enforcement of any right against any person or organization which may be liable to an Insured because of Loss to which this policy may also apply.

3.   No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent. Subsequent payments which are deemed by us as having been prejudiced by any such voluntary payment will also be the sole responsibility of the Insured.

B.   Report of a Potential Claim

Solely at an Insured's option, an Insured may within the Policy Period report an oral complaint by an Employee, former Employee or applicant for employment alleging Discrimination, Harassment and/or Inappropriate Employment Conduct. If such report is received by us or our Authorized Representatives within the Policy Period then any Claim subsequently arising from such oral complaint will be deemed to be made on the date such report was received. Such report must include the identity of the person(s) making the oral complaint. In no event, however, is an Insured entitled to coverage under this policy based on a Laundry List Notification.

C.   Legal Action Against Us

1.   No person or organization has the right under this policy:

(a)   To join us as a party or otherwise bring us into a suit asking for damages from an Insured or

(b)   To sue us on this policy unless all of its terms have been fully complied with.

2.   A person or organization may sue us to recover on an agreed settlement or on final judgment against an Insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable LIMIT OF LIABILITY. An agreed settlement means a settlement and release of liability signed by us, an Insured and the claimant's legal representative.

D.   Other Insurance

If other valid and collectable insurance is available to an Insured covering a Loss also covered by this policy, other than insurance that is specifically stated to be in excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of any other insurance.

E.   Premium

1.   The Premium shown in the Declarations, is for the Policy Period shown in the Declarations.

2.   This policy is subject to a minimum earned premium of twenty five percent (25%) of the total Premium shown in the Declarations;

F.   Cancellation

You may cancel this policy by mailing to us written notice stating when, not less than thirty (30) days thereafter such cancellation shall be effective.   We may cancel this policy by mailing to the Named Insured at the address shown in the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective.   We may cancel this policy for non-payment of Premium by mailing to the Named Insured at the address shown in the Declarations, written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be be sufficient proof of notice.   The effective date and hour of cancellation as stated in the notice shall become the end of the Policy Period.   Delivery of such written notice shall be equivalent to mailing.

If you cancel, earned Premium shall be computed in accordance with the short rate table and procedures shown in **SHORT RATE TABLE AND PROCEDURES**. The Premium shall be deemed fully earned if any Claim under this policy is reported to us on or before the date of cancellation. If we cancel, earned Premium shall be computed pro rata. Premium adjustment may be made at the time cancellation becomes effective, but payment or tender of unearned Premium is not a condition of cancellation.

G. Representations

By accepting this policy you agree:

1. all statements in the Application and any attachments as well as all other information provided to us are accurate and complete;

2. those statements are based upon representations you made to us; and

3. we have issued this policy in reliance upon your representations.

H. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the Named Insured shown in the Declarations, written notice of the non-renewal not less than sixty (60) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient notice of non-renewal.

I. Transfer Of Rights Of Recovery Against Others to Us

If an Insured has rights to recover all or part of any payments we have made under this policy, those rights are transferred to us; the Insured must do nothing after a Loss to impair them. At our request, an Insured will bring suit or transfer those rights to us and help us to enforce them.

J. Bankruptcy

Bankruptcy or insolvency of any Insured or of any Insured's estate will not relieve us of our obligations under this policy, except as excluded in **EXCLUSIONS: WHAT IS NOT COVERED** section II.

K. False Or Fraudulent Claims

If any Insured shall proffer any Claim knowing the same to be false or fraudulent as regards amount or otherwise, this policy will become void for such Claim and the Claim hereunder shall be forfeited.

L. Compliance with Client Service Agreement

With respect to Claims made against any Client Company, coverage available to the Client Company or to Employees leased to that Client Company is conditioned upon the Client Company's compliance with the Client Service Agreement and all your applicable policies and procedures. You shall determine such compliance at the time the Client Company Claim is made.

X. **DEFINITIONS**

A. Claim(s) means a written complaint or written charge made against an Insured or a written demand made against an Insured in which damages are alleged or where specific charges of Discrimination, Harassment, Inappropriate Employment Conduct and/or, if purchased, Inappropriate Third Party Conduct are brought.

Claim includes a civil action, suit or administrative proceeding, to which any Insured must submit or to which any Insured submits with our consent.

Claim shall not mean:

1. any labor or grievance arbitration subject to a collective bargaining agreement; or

2. any complaint, writ or other proceeding in which an Insured is alleged to have committed or engaged in a criminal offense or violation of a federal, state or local penal law.

B.  **Client Company** means any of your clients whose employees are on your payroll, provided that you and the worksite employer have a Client Service Agreement.

C.  **Client Service Agreement** means a contractual agreement between you and a Client Company pursuant to which you assume the legal and/or administrative responsibilities of a Client Company on behalf of all or part of the Client Company's workforce.

D.  **Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific Claim including attorney fees and expenses, the cost of legal proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the LIMIT OF LIABILITY that applies). We have no obligation to furnish any bonds.

The following are not Defense Costs:

1.  salaries and expenses of our employees, including in-house and/or coverage attorneys, salaries and expenses of any Insured's employees or the fees and expenses of independent adjusters we hire; or

2.  amounts incurred prior to giving notice to us or our Authorized Representatives, as shown in the Declarations.

E.  **Discrimination** means termination of the employment relationship, a demotion, a failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by federal, state or local law.

This policy covers retaliation claims based on unlawful discrimination, except as excluded in EXCLUSIONS: WHAT IS NOT COVERED section II.

F.  **Employee** means an individual whose labor or service is engaged by and directed by the Named Insured, or any covered entity. This includes volunteers, part-time, seasonal and temporary Employees as well as any individual employed in a supervisory, managerial or confidential position. Independent contractors and sub-contractors are not Employees unless they are dedicated agents or representatives of an Insured. Employees who are leased to another employer are not Employees. Employees leased to a Client Company with a Client Service Agreement are considered to be Employees.

G.  **Financial Impairment** means the status of an Insured resulting from the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate that Insured.

H.  **Harassment** means unwelcome sexual or non-sexual advances, requests for sexual or non-sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature, where such harassment is based on a factor or category prohibited by law (including sex, race, age, national origin, disability, etc.), that (1) explicitly or implicitly are made a condition of employment, (2) are used as a basis for employment decisions, or (3) create a work environment that interferes with performance.

I.  **Inappropriate Employment Conduct** means any of the following:

1.  actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful or in breach of an implied employment contract or breach of the covenant of good faith and fair dealing in the employment contract;

2.  allegations of wrongful demotion, or wrongful discipline;

3.  allegations of misrepresentation made by an Employee, a former Employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote;

4.  allegations of infliction of emotional distress, mental injury, mental anguish, shock, sickness, disease or disability made by an Employee, a former Employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote;

5.  allegations of false imprisonment, detention or malicious prosecution made by an Employee, a former Employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote;

6.    allegations of libel, slander, defamation of character or any invasion of right of privacy made by an Employee, a former Employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote or

7.    other personal injury allegations made by an Employee, a former Employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote.

Inappropriate Employment Conduct does not include damages determined to be owing under a written or express contract of employment or obligation to make payments, including but not limited to severance payments.

Inappropriate Employment Conduct shall not include any allegations other than those set forth above.

J.    **Insured Event** means actual or alleged acts of Discrimination, Harassment, and/or Inappropriate Employment Conduct, by an Insured against an Employee or former Employee or applicant for employment with an Insured entity.  Insured Event shall not include Claims for actual or alleged violation of any federal, state or local wage and hour laws or regulations.

K.    **Laundry List Notification** means any attempt by an Insured to report multiple matters under this policy in a summary fashion that does not comply with CONDITIONS section VIII. A. or B.  By way of example, a Laundry List Notification may consist of a report by an Insured that lists purported potential claimants, either in the absence of a Claim, or in the absence of an oral complaint.

L.    **Loss** means damages, judgments (including prejudgment and postjudgment interest awarded against an Insured on that part of any judgment paid by us), settlements, statutory attorney fees and Defense Costs.

However, Loss does not include anything specifically excluded in EXCLUSIONS; WHAT IS NOT COVERED section II, or any of the following:

1.    non-monetary relief (this provision does not apply to Defense Costs where non-monetary relief is sought for alleged Harassment, Discrimination, Inappropriate Employment Conduct and/or, if purchased, Inappropriate Third Party Conduct);

2.    payment of insurance plan benefits by or on behalf of retired Employees, or that to which a claimant would have been entitled as an Employee had any Insured provided the claimant with a continuation of insurance;

3.    liquidated damages where there is a finding of willfulness;

4.    costs incurred by an Insured  to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person; costs associated with eliminating non-essential duties from the job description of a disabled person; costs associated with providing a disabled person with reasonable workplace accommodations; and costs associated with lost productivity by an employer as the result of making a reasonable workplace accommodation for a disabled person;

5.    matters which may be deemed uninsurable according to the law under which this policy is construed;

6.    amounts owed under federal, state or local wage and hour laws;

7.    punitive or exemplary damages;

8.    commissions, bonuses, profit sharing or benefits pursuant to a contract of employment, including but not limited to vacation, holiday, and/or sick pay; or

9.    severance payments.

M.    **One Insured Event** means (1) one or more covered allegations of Discrimination, Harassment and/or Inappropriate Employment Conduct which are related by an unbroken chain of events or (2) class action or multiple claimant or multiple plaintiff suits arising out of related Insured Events.

**XI.**   **SHORT RATE TABLE AND PROCEDURES**

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Insured the earned premium shall be computed as follows:

### SHORT RATE CANCELLATION TABLE

A.  For Insurance written for one year:

| Days Insurance in force | Percentage of one Year Premium | Days Insurance in force | Percentage of one Year Premium |
|---|---|---|---|
| | | 197-200 | 64 |
| 55-58 | 26 | | |
| | | 206-209 | 66 |
| 63-65 | 28 | | |
| | | 215-218 | 68 |
| 70-73 | 30 | | |
| | | 224-228 | 70 |
| 77-80 | 32 | | |
| | | 233-237 | 72 |
| 84-87 | 34 | | |
| | | 242-246 (8 months) | 74 |
| 92-94 | 36 | | |
| | | 251-255 | 76 |
| 99-102 | 38 | | |
| | | | 78 |
| 106-109 | 40 | 261-264 | |
| | | 270-273 (9 months) | 80 |
| 114-116 | 42 | | |
| | | 279-282 | 82 |
| 121-124 (4 months) | 44 | | |
| | | 288-291 | 84 |
| 128-131 | 46 | | |
| | | 297-301 | 86 |
| 136-138 | 48 | | |
| | | 306-310 | 88 |
| 143-146 | 50 | | |
| | | 315-319 | 90 |
| 150-153 (5 months) | 52 | | |
| | | 324-328 | 92 |
| 157-160 | 54 | | |
| | | 333-337 (11 months) | 94 |
| 165-167 | 56 | | |
| | | 343-346 | 96 |
| 172-175 | 58 | | |
| | | 352-355 | 98 |
| 179-182 (6 months) | 60 | | |
| | | 361-365 (12 months) | 100 |
| 188-191 | 62 | | |

B.  For Insurance written for more or less than one year:

1.  If Insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an Insurance written for a term of one year.

2.  If Insurance has been in force for more than 12 months:

   a) Determine full annual premium as for an Insurance written for a term of one year.

   b) Deduct such premium from the full Insurance premium, and on the remainder calculate the *pro-rata* earned premium on the basis of the ratio of the length of time beyond one year the Insurance has been in force to the length of time beyond one year for which the Insurance was originally written.

   c) Add premium produced in accordance with items a) and b) to obtain earned premium during full period Insurance has been in force.

DECLARATIONS

### EMPLOYMENT PRACTICES INSURANCE COVERAGE
### CLAIMS FIRST MADE AND REPORTED

Insurance is provided by:          Various Insurers as per Schedule attached.

Policy Number:                     1115NAFIC8111970

1.  NAMED INSURED:                 ACCORD HUMAN RESOURCES, INC
                                   ACCORD HUMAN RESOURCES OF FLORIDA, INC
                                   ACCORD HUMAN RESOURCES OF FLORIDA II, INC
                                   ACCORD HUMAN RESOURCES OF FLORIDA III, INC
                                   ACCORD HUMAN RESOURCES OF GEORGIA, INC
                                   ACCORD HUMAN RESOURCES OF CALIFORNIA, INC
                                   ACCORD HUMAN RESOURCES OF CALIFORNIA II, INC
                                   ACCORD HUMAN RESOURCES OF NEW YORK, INC
                                   ACCORD HUMAN RESOURCES OF NEW YORK II, INC
                                   ACCORD HUMAN RESOURCES OR NEW YORK III, INC
                                   ACCORD HUMAN RESOURCES OF TEXAS, INC
                                   ACCORD HUMAN RESOURCES OF COLORADO, INC
                                   ACCORD PERSONAL SERVICES
                                   210 PARK AVENUE HOLDING, INC
                                   OXFORD INSURANCE LIMITED
                                   ACCORD FINANCIAL GROUP, INC
                                   ACCORD TECHNOLOGY, LLC
                                   MOSAIC BY ACCORD, LLC

NOTICE:   This is a Claims First Made and Reported Policy.  Please read this policy carefully and discuss the
          coverage with your insurance agent.  The Application Form and attachments are hereby attached and
          made a part of this policy.

          ☐ Individual     ☐ Partnership    ☒ Corporation    ☐ Joint Venture    ☐ Other

2.  POLICY PERIOD:        From:   1st October, 2008
                          To:     1st October, 2009
                          at 12:01AM (Standard Time at YOUR address shown below).

3.  ADDRESS:              210 Park Avenue, Suite 1200, Oklahoma City, Oklahoma 73102
                          9717 East 42nd Street, Suite 104, Tulsa, Oklahoma 74146
                          5808 South Rapp Street, Suite 207, Littleton, Colorado 80120
                          7473 Skillman Street, C Building 102, Dallas, Texas 75231
                          3575 Koger Boulevard, Suite 233, Duluth, Georgia 30096
                          410 Ware Boulevard, Suite 716, Tampa, Florida 33619
                          One LePage Place, Suite 202, Syracuse, New York 13206
                          450 7th Avenue, Suite 936, New York, New York 10123

4.  LIMIT OF LIABILITY
    (INCLUDES COSTS OF DEFENSE)  a)  USD 2,000,000    Each Insured Event
                                 b)  USD 2,000,000    Total Aggregate
                                 c)  USD   250,000    Client Company Each Insured Event
                                 d)  USD 5,000,000    Client Company Total Aggregate
                                 e)  USD   250,000    Multiple Client Companies Each Insured Event

5.   SELF INSURED RETENTION:     a)   USD   25,000     Any One Insured Event
                                 b)   USD   10,000     Client Company Any One Insured Event in
                                                       respect of Client Companies with 15 or less
                                                       employees

                                      USD   25,000     Client Company Any One Insured Event in
                                                       respect of Client Companies with more than 15
                                                       employees

6.   PRIOR KNOWLEDGE DATE:       1st October, 2008

7.   PREMIUM:                    USD 122,705.00

8.   AUTHORIZED REPRESENTATIVES:  Kissel Pesce Hirsch & Wilmer LLP
                                  580 White Plains Road, Tarrytown, New York 10591
                                  Attention:        Jeffrey Hirsch
                                  Telephone:        (914) 750 5933
                                  Facsimile:        (914) 750 5922

Please quote following reference when dealing with our authorised representatives:  1115/NAPI08111970

                                  Application dated                    4th September, 2008
                                  Third Party Questionnaire dated:     4th September, 2008

Endorsements attaching hereto:    Punitive Damages Extension
                                  Third Party In-House Staff Only Coverage Endorsement
                                  NMA 1256 – Nuclear Incident Exclusion Clause
                                  NMA 1477 – Radioactive Contamination Exclusion Clause
                                  NMA 2918 – War & Terrorism Exclusion
                                  NMA 1998 – Service of Suit Clause
                                  LMA 5052 – TRIA Endorsement
                                  623AFB00113 – Choice of Law Clause
                                  623AFB00082 – Premium Payment Warranty
                                  LMA3333 – (RE)Insurers Liability Clause

Dated in London this 19th Day of September, 2008

## PUNITIVE DAMAGES EXTENSION

In consideration of premium, as shown in the Declarations, it is hereby understood and agreed that Exclusion R in Section II, Punitive Damages is deleted where insurable. Such extension of coverage shall be part of and not in addition to the Limit of Liability, as shown in the Declarations.

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

## THIRD PARTY IN-HOUSE STAFF ONLY COVERAGE ENDORSEMENT

It is hereby understood and agreed that, subject to the terms, provisions, limitations and exclusions of the policy we will pay on behalf of the Insured Loss amounts that an Insured is legally obligated to pay on account of a Claim first made during the Policy Period or any extension thereof by a Third Party Claimant because of a Third Party Insured Event, provided that the Claim is reported to us in accordance with Section IX., CONDITIONS A., in respect of in-house staff only. The amount we will pay is limited as described in item 4. LIMIT OF LIABILITY and 5. SELF INSURED RETENTION of the Declarations.

For the purposes of this endorsement, the following are added to item X.DEFINITIONS:

Third Party Insured Event means actual or alleged acts of Inappropriate Third Party Conduct by an Insured against any natural person who is not an Employee of any Insured

Inappropriate Third Party Conduct means actual or alleged acts of discrimination or harassment by an Insured against any natural person who is not an Employee. Inappropriate Third Party Conduct shall not include actual or alleged acts of assault or battery.

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.      Under any Liability Coverage, to injury, sickness, disease, death or destruction:

(a)    with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

° NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Mendes & Mount, LLP, 750 Seventh Avenue, New York, NY 10019-6829, USA, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

24/4/86
NMA1998

### U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
### NEW & RENEWAL BUSINESS ENDORSEMENT

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as guaranteed in the disclosure notice.*

In consideration of an additional premium of USD 0.00 paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:08 midnight December 31, 2007, the date on which the TRIA Program is scheduled to terminate or the expiry date of this policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

LMA5052
22/12/05
Form approved by Lloyd's Market Association

### CHOICE OF LAW

It is hereby understood and agreed by both the Insured and Underwriters that any dispute concerning the interpretation of this Policy shall be governed by the laws of New York, N.Y., U.S.A.

623AFB00113

### PREMIUM PAYMENT WARRANTY

IT IS HEREBY WARRANTED that all premium due to Underwriters under this policy is paid within 45 days from inception.

Non-receipt by Underwriters of such premium, by midnight (local standard time) on the premium due date, shall render this policy void with effect from inception.

623AFB00082

## LMA3333 - (RE)INSURERS LIABILITY CLAUSE

### (Re)insurer's liability several not joint

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

### Proportion of liability

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333



# Lloyd's Policy

**We, Underwriting Members** of the Syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as 'the Underwriters'), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the Premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy.

**The Underwriters** hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his Executors and Administrators) shall be liable only for his own share of his Syndicate's proportion of any such Loss and of any such Expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date or reference shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.

*R. C. Tashner*

**LLOYD'S POLICY SIGNING OFFICE**
General Manager



If this policy (or any subsequent endorsement) has been produced to you in electronic form, the original document is stored on the Insurer's Market Repository to which your broker has access.

J(A)  NMA2421 (3/1/95) Form approved by Lloyd's Market Association

# NCG North America

# Professional Employer Organisation's

# Employment Practices Liability Insurance

## Claims First Made and Reported

**NOTICE:** This Coverage is Provided on a Claims Made and Reported Basis. Except to such extent as may otherwise be provided herein, the coverage afforded under this insurance policy is limited to liability for only those covered Claims that are first made against an Insured and reported to us in accordance with the notice/reporting provisions set forth in this policy. LIMIT OF LIABILITY shall be reduced and may be completely exhausted by payment of Defense Costs. Please review the coverage afforded under this insurance policy carefully and discuss the coverage hereunder with your insurance agent or broker.

The consideration for our issuing this policy is the payment of Premium; in issuing the policy, we have relied upon all statements made to us in the Application and any attachments and all other information provided to us. The Application and attachments are incorporated herein and form a part of this policy.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.

Under this policy the words "we", "us" and "our" refer to the Underwriters providing this insurance.

The word "Insured" means any person or organization qualifying as such under WHO IS INSURED.

**READ THIS POLICY CAREFULLY TO DETERMINE THE EXTENT OF COVERAGE. IMPORTANT: THIS IS A CLAIMS FIRST MADE AND REPORTED POLICY WHICH INCLUDES COSTS OF DEFENSE WITHIN THE LIMIT OF LIABILITY.**

## I.    Coverage: What is covered

    **A.**   We will pay Loss amounts that an Insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. However, the amount we will pay is limited as described in the LIMIT OF LIABILITY and SELF INSURED RETENTION sections of this policy.

    **B.**   If the Declarations Page indicates that the Insured purchased coverage for a Third Party Insured Event, then we will pay Loss amounts that an Insured is legally obligated to pay on account of a Claim because of a Third Party Insured Event to which this policy applies. The amount we will pay is limited as described in the LIMIT OF LIABILITY and SELF INSURED RETENTION sections of this policy.

    **C.**   This policy applies only if:

        1.   A Claim is first made against an Insured in accordance with WHEN COVERAGE IS PROVIDED;

        2.   The Claim is reported in accordance with WHEN COVERAGE IS PROVIDED and CONDITIONS section VIII.A. Duties in the event of a Claim; and

        3.   A Claim is first made against an Insured in accordance with WHERE COVERAGE IS PROVIDED.

D. **Defense.** We have the right and duty to defend any Claim for an Insured Event or, if purchased, a Third Party Insured Event made or brought against any Insured to which this policy applies. We will give consideration to your preference for defense counsel; however the final decision rests with us. We have no duty to provide other services or take other actions. Our duty to defend any Claim ends when the **LIMIT OF LIABILITY** that applies has been exhausted, and in such event, the Named Insured shall, upon notice from us, promptly take over control of the defense.

We have the right to investigate and to settle any Claim for an Insured Event or, if purchased, a Third Party Insured Event, in the manner and to the extent that we believe is proper, contingent upon the consent of the Named Insured as defined in this policy. This includes the right to agree to post a notice of compliance, provided such notice does not contain an admission of liability.

You may take over control of any outstanding Claim previously reported to us only if we both agree that you should, if required under law or if a court orders you to do so.

If your **LIMIT OF LIABILITY** is exhausted, we will notify you of all outstanding Claims so that you can take over control of their defense. We will help to transfer control to you.

B. **During the transfer of control.** We agree to take whatever steps are necessary to continue the defense of any outstanding Claim and avoid a default judgment during the transfer of control to you. If we do so, you agree to pay reasonable expenses that we incur for taking such steps after the **LIMIT OF LIABILITY** is exhausted.

F. **Duty to pay.** We have the duty to pay any Loss (after you pay the applicable self-insured retention) that results from any Claim for an Insured Event or, if purchased, a Third Party Insured Event made or brought against any Insured to which this policy applies. Our duty to pay ends when the applicable **LIMIT OF LIABILITY** has been exhausted. We will not pay more than the applicable **LIMIT OF LIABILITY**.

We have the duty to pay Defense Costs incurred (after you pay the applicable self-insured retention) for the defense of any Claim that is controlled by us. Any payment of Defense Costs is included in the **LIMIT OF LIABILITY**, it is not in addition to the **LIMIT OF LIABILITY**.

G. **Recommended Settlements.** As respects any Claim for which we recommend that a settlement offer be accepted but you do not give your consent to such settlement, and the Claim later results in a judgment or settlement in excess of the recommended settlement, our liability for Loss on account of such Claim shall not exceed: 1) the recommended settlement amount plus Defense Costs incurred as of the date we recommended the settlement; plus 2) 85% of covered Loss excess of the recommended settlement so long as 15% is borne by the insured at its own risk and uninsured. This provision shall not apply unless the total Loss, including the recommended settlement, would exceed the applicable Retention amount.

## II.   Definitions

A. **Application** means each and every signed Application, any attachments to such Applications, other materials submitted therewith and incorporated therein and any other such documents submitted in connection with the underwriting of this policy or the underwriting of any other employment practices liability policy issued by us, or any of our affiliates, of which this policy is a renewal, replacement or which succeed it in time.

B. **Claim(s)** mean a written complaint or written charge made against an Insured or a written demand, including a demand for non-monetary or injunctive relief, made against an Insured in which damages are alleged or where specific charges of Discrimination, Harassment, Inappropriate Employment Conduct and/or, if purchased, Inappropriate Third Party Conduct are brought.

Claim includes a civil action, suit or administrative proceeding, to which any Insured must submit or to which any Insured submits with our consent.

Claim shall also include any complaint, writ or other proceeding in which an Insured is alleged to have committed or engaged in a criminal offence or violation of a federal, state or local penal law whereby such criminal offence or violation arises from an Insured Event.

C.   **Client Company** means a worksite employer that has a Client Service Agreement in place with you at the time of the Insured Event and at the time the Claim is made.

D.   **Client Service Agreement** means a contractual agreement between you and a Client Company pursuant to which you assume the legal and/or administrative responsibilities of a Client Company on behalf of all or part of the Client Company's workforce.

E.   **Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific Claim including attorney fees and expenses, the cost of legal proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the **LIMIT OF LIABILITY** that applies).  We have no obligation to furnish any bonds.

The following are not Defense Costs:  costs incurred by any Insured before notice is provided to us or our Authorized Representatives; salaries and expenses of your employees, including in-house and/or coverage attorneys, salaries and expenses of our employees, or our in-house or coverage attorneys or the fees and expenses of independent adjusters we hire.

F.   **Discrimination** means termination of the employment relationship, a demotion, a failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by federal, state or local law.

This policy covers retaliation claims based on unlawful discrimination, except as excluded in **EXCLUSIONS: WHAT IS NOT COVERED section IX.**

G.   **Employee** means an individual whose labor or service is engaged by and directed by the Named Insured, or any covered entity.   This includes volunteers, part time, seasonal, temporary Employees and Leased Employees, as well as any individual employed in a supervisory, managerial or confidential position.  Independent contractors and sub contractors are not Employees unless they are dedicated agents or representatives of an Insured.

H.   **Harassment** means unwelcome sexual or non-sexual advances, requests for sexual or non-sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature, where such harassment is based on a factor or category prohibited by law (including sex, race, age, national origin, disability, etc.), that (1) explicitly or implicitly are made a condition of employment, (2) are used as a basis for employment decisions, or (3) create a work environment that interferes with performance.

I.   **Inappropriate Employment Conduct** means any of the following:

   1.   actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful or in breach of an implied employment contract or breach of the covenant of good faith and fair dealing in the employment contract;

   2.   allegations of wrongful demotion, or excessive or unfair discipline;

   3.   allegations of misrepresentation;

4.  allegations of infliction of emotional distress, mental injury, mental anguish, humiliation, shock, sickness, disease and disability;

5.  allegations of false imprisonment, detention or malicious prosecution;

6.  allegations of libel, slander, defamation of character or any invasion of right of privacy;

7.  allegations of abusive or hostile working environment;

8.  allegations of deprivation of career opportunity, negligent evaluation or failure to grant tenure;

9.  employment-related violations of the Uniformed Services Employment and Reemployment Rights Act or Family Medical Leave Act or

10. allegations of negligent hiring or negligent supervision of others, including failure to provide adequate training.

but only if arising from an Insured's employment related decision to hire, fire, promote or demote and claimed by a former Employee, current Employee or an applicant for employment and only if committed or allegedly committed by any Insured in their capacity as such.

Inappropriate Employment Conduct shall not include any allegations other than those set forth above.

**Inappropriate Third Party Conduct** means actual or alleged acts of discrimination or harassment by an Insured, except Leased Employees, against any natural person who is not an Employee. Inappropriate Third Party Conduct shall not include actual or alleged acts of assault or battery. Inappropriate Third Party Conduct shall not include actual or alleged acts of discrimination or harassment by any Leased Employee against any natural person who is not an Employee.

K.  **Insured Event** means actual or alleged acts of Discrimination, Harassment, and/or Inappropriate Employment Conduct, by an Insured against an Employee or former Employee or applicant for employment with an Insured entity. Insured Event shall not include Claims for actual or alleged violation of any federal, state or local wage and hour laws or regulations.

L.  **Leased Employee** means a person hired by you to work for any Client Company pursuant to a Client Service Agreement.

M.  **Loss** means damages, judgments (including prejudgment and post judgment interest awarded against an Insured on that part of any judgment paid by us), settlements we authorize or agree to, verdicts and awards, including compensatory damages, front pay, back pay, liquidated damages, statutory attorney fees and Defense Costs

If you purchase punitive, exemplary and multiple damages coverage (see Declarations Item 4.c) then we will pay such damages as Loss so long as we are permitted to do so under the law of the most favourable applicable jurisdiction.

However, Loss does not include anything specifically excluded in EXCLUSIONS: **WHAT IS NOT COVERED** section IX, or any of the following:

1.  payment of insurance plan benefits by or on behalf of retired Employees, or that to which a claimant would have been entitled as an Employee had any Insured provided the claimant with a continuation of insurance;

2.  costs incurred by an Insured to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person; costs

associated with eliminating non-essential duties from the job description of a disabled person; costs associated with providing a disabled person with reasonable workplace accommodations; and costs associated with lost productivity by an employer as the result of making a reasonable workplace accommodation for a disabled person;

3. matters which may be deemed uninsurable according to the law under which this policy is construed;

4. amounts owed under federal, state or local wage and hour laws;

5. amounts owed under a written contract of employment (unless intent is to carve out *all* employment contracts, whether written, oral or implied, in which case subsection 1 in the definition of Inappropriate Employment Conduct needs to be modified);

6. commissions, bonuses, profit sharing or benefits pursuant to a contract of employment, including but not limited to vacation, holiday, and/or sick pay;

7. severance payments or obligations to make payments;

8. amounts owed under partnership, stock or other ownership agreements; or

9. fines, penalties and taxes.

Current policy also carves out non-monetary relief (but not Defense Costs when non-monetary relief is sought for an otherwise covered Insured Event);

N. **One Insured Event** means (1) one or more covered allegations of Discrimination, Harassment and/or Inappropriate Employment Conduct which are related by an unbroken chain of events or (2) class action or multiple claimant or multiple plaintiff suits arising out of related Insured Events.

O. **One Third Party Insured Event** means one or more covered allegations of Inappropriate Third Party Conduct which are related by an unbroken chain of events.

P. **Third Party Insured Event** means actual or alleged acts of Inappropriate Third Party Conduct by an Insured against any natural person who is not an Employee of any Insured.

## III.   When coverage is provided

A. This policy applies only to Claims arising out of an Insured Event or, if purchased, a Third Party Insured Event first made or brought during the Policy Period and which are reported to us in accordance with the policy's notice provisions as set forth in **CONDITIONS** section IX. A. Duties in the Event of a Claim. Claims are considered to be first made when it is first served or received by the Insured.

B. All Claims because of One Insured Event or, if purchased One Third Party Insured Event, will be considered to have been made or brought on the date that the first of those Claims was first made or brought.

C. **Limited Reporting Period:** means the sixty (60) day period after the policy ends, during which Claims which happen or commence during the Policy Period because of Insured Events or Third Party Insured Events and are reported in accordance with section I. and IX. of the policy can be reported.

D. **Extended Reporting Period.** If this policy is non-renewed or cancelled, except for non payment of premium, an Extended Reporting Period of either twelve (12) months, twenty-four (24) months or thirty-six (36) months from the end of the Policy Period, or the effective date of cancellation, whichever is earlier, can be added by us issuing you an Extended Reporting Period Endorsement in exchange for your payment of an additional premium.

The Extended Reporting Period Endorsement will not be issued unless we receive a written request for it within thirty (30) days after this policy is cancelled or non-renewed, nor will it take effect unless the additional Premium is paid within thirty (30) days after this policy is cancelled or non-renewed. Once that Premium is paid the endorsement may not be cancelled and the additional Premium will be fully earned.

The additional premium for a 12 month Extended Reporting Period will be one hundred percent (100%) of the premium charged for the last Policy Period. The additional premium for a 24 month Extended Reporting Period will be one hundred and twenty-five percent (125%) of the premium charged for the last Policy Period. The additional premium for a 36 month Extended Reporting Period will be one hundred and fifty percent (150%) of the premium charged for the last Policy Period.

However, the Extended Reporting Period will not apply to any Claim if other insurance you buy covers you or would cover you if its limits of coverage had not been exhausted.

Coverage under the Extended Reporting Period is with respect to Claims first made against an Insured during the Policy Period or Extended Reporting Period and first reported by an Insured during the Extended Reporting Period, provided always that Claims reported during the Extended Reported Period are limited to Insured Events or, if purchased, Third Party Insured Events which happen or commence before the original Policy Period ends by either cancellation or non-renewal and which are otherwise covered by this policy.

The LIMIT OF LIABILITY that applies at the end of the Policy Period is not renewed or increased and the Limits, as shown in the Declarations, shall not be increased in any way by the Limited Reporting Period or the addition of the Extended Reporting Period.

E.   If, during the Policy Period, any of the following changes occur:

    a.   the acquisition of an Insured, or of all or substantially all of its assets, by another entity, or the merger or consolidation of an Insured into or with another entity such that the Insured is not the surviving entity; or

    b.   the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate over fifty percent (50%) of the directors of an Insured

coverage under this policy with respect to such Insured will continue in full force and effect with respect to Claims for Insured Events or, if purchased, Third Party Insured Events committed before such change, but coverage with respect to such Insured will cease with respect to Claims for Insured Events or, if purchased, Third Party Insured Events committed after such change. After any such change, this policy may not be cancelled, regardless of CONDITIONS section VIII.F. Cancellation, and the entire Premium for the policy will be deemed fully earned.

## IV.   Where coverage is provided

This policy covers Claims made and Insured Events or, if purchased, Third Party Insured Events, occurring anywhere in the world.

## V.   Who is insured

A.   **Individual.** If you are shown in the Declarations as an Individual, you and your spouse are Insureds but only for the conduct of a business of which you are the sole owner.

An Insured's lawful spouse or domestic partner (whether such status is derived by reason of statue or common law as recognized by the applicable jurisdiction) will also be considered to be an

B. **Corporation.** If you are shown in the Declarations as a corporation or organization other than a partnership or joint venture, you are an Insured. Your stockholders are also Insureds, but only with respect to their liability as your stockholders.

C. **Partnership or Joint Venture.** If you are shown in the Declarations as a partnership or joint venture, you are an Insured. Your partners or co-venturers and their spouses are also Insureds, but only for the conduct of your business.

However, no person nor organization is covered for the conduct of any current or past partnership or joint venture not named in the Declarations.

D. **Other.** If you are a Limited Liability Corporation (LLC), or a Limited Liability Partnership ('LLP') of the Named Insured and you are shown in the Declarations as 'Other' you are an Insured. Your members, partners and shareholders are also Insureds but only with respect to the conduct of your business.

E. **Employees.** Your Employees, executive officers, directors and your trustees are Insureds only for the conduct of your business within the scope of their employment. Your Employee's status as an Insured will be determined as of the date of the alleged Discrimination, Harassment, Inappropriate Employment Conduct and/or, if purchased, Inappropriate Third Party Conduct, which caused an Insured Event or, if purchased, a Third Party Insured Event.

F. **Mergers and Acquisitions.** Any organization that you newly acquire, form or merge with while this policy is in effect that has less than 10% of the total number of your Employees as of the inception date of this policy shall be an Insured at the time of such acquisition, merger or formation if you own more than fifty percent (50%) of it. Within thirty (30) days prior to the expiration of the policy, the Insured shall give us written notice as to all such organizations. If you acquire, form or merge with any organization that has more than 10% of the total number of your Employees as of the inception date of this policy, such organization is also an Insured if you own more than fifty percent (50%) of it; provided, however, no such organization is covered for more than forty five (45) days or the remainder of the Policy Period, whichever is less, from the date acquired, merged or formed unless we agree to cover such acquisition or newly formed organization within such forty five (45) day period in consideration of an additional Premium to be determined by us. Notwithstanding the foregoing, any acquired or formed organization is neither covered for Loss that results from an Insured Event or, if purchased, a Third Party Insured Event that happened or first commenced before the Insured acquired or formed it; nor for Loss covered under any other Insurance.

This provision does not apply to a partnership or joint venture. Nor does it apply to any organization once it is shown in the Declarations of this policy.

G. **Subsidiary.** Any organization more than 50% owned by the Named Insured and listed in the Application shall be an Insured.

H. **Client Companies.** Any Client Company shall also be an Insured provided that the Insured Event is committed, or allegedly committed, by an Employee. A Client Company shall not be an Insured in connection with any Claim if it is named on account of the alleged wrongful conduct of any non-Employee. A Client Company's status as an Insured will be determined based on (a) the existence of a valid and non-expired Client Service Agreement as of the date of the alleged Insured Event; and (b) Accord's written agreement to have such Client Company be considered an Insured under this Policy during the term of its Client Service Agreement with the Client Company.

## VI.   Limit of liability

A.   The amount shown at Item 4.a) in the Declarations is the most we will pay for Claims first made or brought during the Policy Period for Loss that results from any One Insured Event regardless of the number of Claims.

B.  The amount shown at Item 4.b) in the Declarations is the most we will pay for Claims first made or brought during the Policy Period for Loss that results from any One Third Party Insured Event, regardless of the number of Claims.

C.  The amount shown at Item 4.c) in the Declarations is the most we will pay for punitive, exemplary and multiple damages where insurable by applicable law most favourable to the Insured, regardless of the number of Claims.

D.  The amount shown at Item 4.d) in the Declarations is the most we will pay for the combined total of all Claims first made or brought during the Policy Period for Loss that results from all Insured Events, Third Party Insured Events and punitive, exemplary and multiple damages where applicable and as provided for in sections II, K, and VI. C.

E.  Client Company Each Insured Event Limit. This is the most we will pay for Claims first made or brought against a Client Company during the Policy Period for Loss that results from any One Insured Event regardless of the number of Claims.

F.  Client Company Total Aggregate Limit. This is the most we will pay for the combined total of all Claims first made or brought against a Client Company during the Policy Period for Loss that results from all Insured Events.

G.  Multiple Client Companies Each Insured Event Limit. This is the most we will pay for Claims first made or brought against more than one Client Company during the Policy Period for Loss that results from any One Insured Event regardless of the number of Claims.

H.  How the LIMIT OF LIABILITY applies to an extension of the Policy Period. If this Policy Period is extended, the Limits, as shown in the Declarations shall not in any way increase. For purposes of the LIMIT OF LIABILITY, any policy extension is considered to be part of and not in addition to the former Policy Period.

## VII.  How Coverage Limits And Self Insured Retentions (SIRs) Are Applied To Claims Involving Client Companies

When a Claim is made solely against a Client Company, the applicable Client Company SIR amount, as shown in the Declarations, shall apply first, when exhausted the Client Company Each Insured Event Limit of Liability amount, as shown in the Declarations, shall apply.

When a Claim is made against a Client Company and the Named Insured, the Any One Insured Event SIR amount, as shown in the Declarations, shall apply first, when exhausted the Client Company Each Insured Event Limit of Liability amount, as shown in the Declarations, shall apply. Should the Loss exhaust the Client Company Total Aggregate Limit of Liability amount, as shown in the Declarations, the Each Insured Event Limit of Liability amount, as shown in the Declarations, shall apply.

When a Claim is made against more than one Client Company, the applicable Client Company SIR amount for the individual named Client Company with more employees, as shown in the Declarations, shall apply first, when exhausted the Multiple Client Companies Limit of Liability amount, as shown in the Declarations, shall apply.

When a Claim is made against the Named Insured and more than one Client Company the applicable Client Company SIR amount for the individual named Client Company with more employees, as shown in the Declarations, shall apply first, when exhausted the Each Insured Event Limit of Liability amount, as shown in the Declarations, shall apply.

## VIII. Self Insured Retention

Our obligation to pay under this policy applies only to the amount of Loss in excess of any Self Insured Retention amount, as shown in the Declarations, and the LIMIT OF LIABILITY will not be reduced by the amount of such Self Insured Retention.

The Self Insured Retention amount will apply separately to each Claim made, however, it will only apply once to all Claims arising out of any One Insured Event or, if purchased, any One Third Party Insured Event regardless of the number of claimants who allege damages.

If, prior to the termination of any Employee, the Insured obtains and adopts the written advice of legal counsel recommended or approved by us as respects such termination, then the Self Insured Retention shall be reduced by twenty-five percent (25%) for any Claim commenced by that Employee arising from the events of the termination.

If the Insured consents to a settlement of a Claim within twenty (20) days of the first request by Underwriters to consent and the settlement is accepted by the claimant, then the applicable Self-Insured Retention shall be retroactively reduced by ten percent (10%).   Any consent to the same or another settlement after such time shall not reduce the Self-Insured Retention.

If Underwriters receive written notice of a Claim from the Insured in accordance with IX. Conditions A. of this policy no later than fifteen (15) business days after such Claim is first made, then the applicable Self Insured Retention to such Claim shall be reduced by ten percent (10%).  If Underwriters do not receive such written notice within fifteen (15) business days after such Claim is first made, the terms, conditions, exclusions and provisions of this policy shall remain unchanged.

## IX.   Conditions

We have no duty to provide coverage under this policy unless there has been full compliance with all the conditions contained in this policy.

### A.  Duties in the event of a claim

You must see to it that we or our Authorized Representatives, as shown in the Declarations, are notified in writing as soon as practicable but in no event more than sixty days (60) after any Insured who is a principal, partner, officer, director, trustee, in house counsel, head of risk management or head of human resources, becomes aware that a Claim has been made.   Your notification should include copies of all documentation comprising the Claim as well as authorization, co-operation or assistance as we may require throughout the duration of the Claim.

No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.   Subsequent payments that are deemed by us as having been prejudiced by any such voluntary payment will also be the sole responsibility of the Insured.

### B.  Report of a potential claim

Solely at an Insured's option, an Insured may within the Policy Period report an oral complaint by an Employee, former Employee or applicant for employment alleging Discrimination, Harassment and/or Inappropriate Employment Conduct.  If such report is received by us or our Authorized Representatives, as shown in the Declarations, within the Policy Period then any Claim subsequently arising from such oral complaint will be deemed to be made on the date such report was received. Such report must include the identity of the person(s) making the oral complaint.

C.  Legal action against us

   1.  No person or organization has the right under this policy:

     a.  to join us as a party or otherwise bring us into a suit asking for damages from an Insured; or

     b.  to sue us on this policy unless all of its terms have been fully complied with.

   2.  A person or organization may sue us to recover on an agreed settlement or on final judgment against an Insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable **LIMIT OF LIABILITY**. An agreed settlement means a settlement and release of liability signed by us, an Insured and the claimant's legal representative.

D.  Other Insurance

This policy shall be deemed primary insurance in connection with all covered Claims because of an Insured Event. For Claims against Client Companies, this policy applies excess of all indemnification and insurance that may otherwise be available to that client. For Claims because of a Third Party Insured Event, this policy applies excess of all indemnification and insurance that may otherwise be available to any Insured. Nothing herein is intended to make this policy subject to the terms, conditions and limitations of any other insurance, and nothing herein is intended to limit our or any Insured's right to contribution or indemnity from any other party, insurer or indemnitor.

E.  Premium

   1.  The Premium shown in the Declarations is for the Policy Period shown in the Declarations.

   2.  This policy is subject to a minimum earned Premium of twenty five percent (25%) of the total Premium shown in the Declarations.

F.  Cancellation

You may only cancel this policy by mailing to us written notice stating when, not less than thirty (30) days thereafter such cancellation shall be effective. We may cancel this policy for non-payment of Premium by mailing to the Named Insured at the address shown in the Declarations, written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation as stated in the notice shall become the end of the Policy Period. Delivery of such written notice shall be equivalent to mailing.

If you cancel, earned Premium shall be computed in accordance with the short rate table and procedures shown in **SHORT RATE TABLE AND PROCEDURES**. The Premium shall be deemed fully earned if any Claim under this policy is reported to us on or before the date of cancellation. If we cancel, earned Premium shall be computed pro rata. Premium adjustment may be made at the time cancellation becomes effective, but payment or tender of unearned Premium is not a condition of cancellation.

G.  Representations

By accepting this policy you agree:

   1.  all statements in the Application and any attachments as well as all other information provided to us are accurate and complete;

   2.  those statements are based upon representations you made to us;

   3.  we have issued this policy in reliance upon your representations; and

   4.  to disclose any material facts you become aware of between the time that the Application for this policy is signed and the policy inception date.

**H.  When we do not renew**

If we decide not to renew this policy, we will mail or deliver to the Named Insured shown in the Declarations, written notice of the non-renewal not less than sixty (60) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient notice of non-renewal.

**I.  Transfer of rights of recovery against others to us**

If any Insured has rights to recover all or part of any payments we have made under this policy, those rights are transferred to us; the Insured must do nothing after a Loss to impair them.  At our request, any Insured will bring suit or transfer those rights to us and help us to enforce them.

**J.  Bankruptcy**

Bankruptcy or insolvency of any Insured or of an Insured's estate will not relieve us of our obligations under this policy, except as excluded in **EXCLUSIONS:  WHAT IS NOT COVERED** section IX.

**K.  False or fraudulent claims**

If any Insured shall proffer any Claim knowing the same to be false or fraudulent as regards amount or otherwise, this policy will become void for such Claim and the Claim hereunder shall be forfeited.

**L.  Compliance with Client Service Agreement**

With respect to Claims made against any Client Company, coverage available to the Client Company or to Leased Employees is conditioned upon the Client Company's compliance with the Client Service Agreement and all your applicable policies and procedures.  You shall determine such compliance at the time the Client Company Claim is made.

## X.   Exclusions: What is not covered

**A.  Worker's Compensation/ERISA/WARN/FLSA/NRLA/OSHA/COBRA.**  This policy does not cover any Loss arising out of any Claim alleging violation of any:  i) worker's compensation, disability benefits or unemployment compensation law, social security and other employment benefits law; ii) the Employee Retirement Income Security Act of 1974 Public Law 93-406; iii) the Fair Labor Standards Act (except the Equal Pay Act); (iv) the National Labor Relations Act; (v) the Worker Adjustment and Retraining Notification Act; (vi) the Consolidated Omnibus Budget Reconciliation Act of 1985; (vii) the Occupational Safety and Health Act; (viii) any other federal, state or local statute or law similar to any statute or law described in (i) through (vii) of this exclusion; provided, however, this exclusion shall not apply to any Claim for any actual or alleged retaliatory treatment of the claimant on account of the claimant's exercise of rights pursuant to such statute, law, rule or regulation.

**B.  Contractual Liability.**  This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim any Insured is obligated to pay by reason of the assumption of another's liability for an Insured Event or, if purchased, a Third Party Insured Event in a contract or agreement.  This exclusion will not apply to liability for damages because of an Insured Event or, if purchased, a Third Party Insured Event that any Insured would have without the contract or agreement.  This exclusion shall not apply to liability assumed under a Client Service Agreement otherwise covered by this policy

**C.  Consequential Loss.**  This policy does not cover any Loss resulting from or attributable to any allegations made by or solely for the benefit of a claimant's domestic partner, spouse, child, parent, brother or sister.

D. **Wage and Hour Law.** This policy does not cover any Loss arising out of a claim based upon, arising out of, directly or indirectly in connection with, related to or in any way alleging violation of any state or local wage and hour law, however, in the event such Claim also alleges an Insured Event otherwise covered by this policy, notwithstanding the provisions of section I.D, Defense, and subject to all other terms, conditions and exclusions contained in this policy, we agree to pay loss solely for that portion of the claim involving such Insured Event.

E. **Stock Options.** This policy does not cover any Loss resulting from or attributable to stock options, including, without limitation, 1) the failure to grant stock options and/or 2) amounts attributable to unvested stock options which options did not vest because of the actual or alleged wrongful termination of an Employee.

F. **Fraud and Collusion.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim alleging fraud or collusion by an Insured. Without limiting the foregoing, we will pay Defense Costs incurred relating to allegations of fraud and collusion to defend an innocent Insured named in such Claim so long as such Claim also contains allegations against that innocent Insured involving an Insured Event or, if purchased, a Third Party Insured Event otherwise covered by this policy.

G. **Prior Knowledge.** This policy does not cover any Loss arising out of Insured Events or, if purchased, Third Party Insured Events of which any Insured who is a principal, partner, officer, director, trustee, in-house counsel, Employee(s) within the HR or Risk Management department or Employee(s) with personnel and risk management responsibilities was aware by knowledge of the facts or circumstances of such Insured Events or, if purchased, a Third Party Insured Event prior to the Prior Knowledge Date, as shown in the Declarations.

H. **Prior Notice.** This policy does not cover any Loss arising out of Insured Events or, if purchased, Third Party Insured Events that have been the subject of any notice given under any other policy prior to the inception date of this policy.

I. **Client Company Prior Acts.** This policy does not cover any Loss based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any Claim alleging Insured Events against a Client Company which happened or first commenced on or before the date the Client Company signed the Client Service Agreement.

## XI.  Short rate table and procedures

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the Premium for which this insurance is written it is agreed that in the event of cancellation thereof by an Insured the earned Premium shall be computed as follows:

Short rate cancellation table

A.  For insurance written for one year:

| Days Insurance in force | Percentage of one Year Premium |
|---|---|
| 1-54 | 25 |
| 55-58 | 26 |
| 59-62 (2 months) | 27 |
| 63-65 | 28 |
| 66-69 | 29 |
| 70-73 | 30 |
| 74-76 | 31 |
| 77-80 | 32 |
| 81-83 | 33 |
| 84-87 | 34 |
| 88-91 (3 months) | 35 |
| 92-94 | 36 |
| 95-98 | 37 |
| 99-102 | 38 |
| 103-105 | 39 |
| 106-109 | 40 |
| 110-113 | 41 |
| 114-116 | 42 |
| 117-120 | 43 |
| 121-124 (4 months) | 44 |
| 125-127 | 45 |
| 128-131 | 46 |
| 132-135 | 47 |
| 136-138 | 48 |
| 139-142 | 49 |
| 143-146 | 50 |
| 147-149 | 51 |
| 150-153 (5 months) | 52 |
| 154-156 | 53 |
| 157-160 | 54 |
| 161-164 | 55 |
| 165-167 | 56 |
| 168-171 | 57 |
| 172-175 | 58 |
| 176-178 | 59 |
| 179-182 (6 months) | 60 |
| 183-187 | 61 |
| 188-191 | 62 |

| Days Insurance in force | Percentage of one Year Premium |
|---|---|
| 192-196 | 63 |
| 197-200 | 64 |
| 201-205 | 65 |
| 206-209 | 66 |
| 210-214 (7 months) | 67 |
| 215-218 | 68 |
| 219-223 | 69 |
| 224-228 | 70 |
| 229-232 | 71 |
| 233-237 | 72 |
| 238-241 | 73 |
| 242-246 (8 months) | 74 |
| 247-250 | 75 |
| 251-255 | 76 |
| 256-260 | 77 |
| 261-264 | 78 |
| 265-269 | 79 |
| 270-273 (9 months) | 80 |
| 274-278 | 81 |
| 279-282 | 82 |
| 283-287 | 83 |
| 288-291 | 84 |
| 292-296 | 85 |
| 297-301 | 86 |
| 302-305 (10 months) | 87 |
| 306-310 | 88 |
| 311-314 | 89 |
| 315-319 | 90 |
| 320-323 | 91 |
| 324-328 | 92 |
| 329-332 | 93 |
| 333-337 (11 months) | 94 |
| 338-342 | 95 |
| 343-346 | 96 |
| 347-351 | 97 |
| 352-355 | 98 |
| 356-360 | 99 |
| 361-365 (12 months) | 100 |

B.  For insurances written for more or less than one year:

1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual Premium determined as for an insurance written for a term of one year.

2.  If insurance has been in force for more than 12 months;

   a.  Determine full annual Premium as for an insurance written for a term of one year.

b. Deduct such Premium from the full insurance Premium, and on the remainder calculate the pro-rata earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

c. Add Premium produced in accordance with items a) and b) to obtain earned Premium during full period insurance has been in force.

<u>DECLARATIONS</u>

<u>EMPLOYMENT PRACTICES INSURANCE COVERAGE</u>
<u>CLAIMS FIRST MADE AND REPORTED</u>

Insurance is provided by:      Various Insurers as per Schedule attached.

Policy Number:                 1115NAPI09111970

1.  NAMED INSURED:             ACCORD HUMAN RESOURCES, INC
                               ACCORD HUMAN RESOURCES OF FLORIDA, INC
                               ACCORD HUMAN RESOURCES OF FLORIDA II, INC
                               ACCORD HUMAN RESOURCES OF FLORIDA III, INC
                               ACCORD HUMAN RESOURCES OF GEORGIA, INC
                               ACCORD HUMAN RESOURCES OF CALIFORNIA, INC
                               ACCORD HUMAN RESOURCES OF CALIFORNIA II, INC
                               ACCORD HUMAN RESOURCES OF NEW YORK, INC
                               ACCORD HUMAN RESOURCES OF NEW YORK II, INC
                               ACCORD HUMAN RESOURCES OF NEW YORK III, INC
                               ACCORD HUMAN RESOURCES OF TEXAS, INC
                               ACCORD HUMAN RESOURCES OF COLORADO, INC
                               ACCORD PERSONNEL SERVICES
                               210 PARK AVENUE HOLDING, INC
                               OXFORD INSURANCE LIMITED
                               ACCORD FINANCIAL GROUP, INC
                               ACCORD TECHNOLOGY, LLC
                               MOSAIC BY ACCORD, LLC

NOTICE:   This is a Claims First Made and Reported Policy.  Please read this policy carefully and discuss
          the coverage with your insurance agent. The Application Form and attachments are hereby
          attached and made a part of this policy.

          ☐ Individual    ☐ Partnership    ☒ Corporation    ☐ Joint Venture    ☐ Other

2.  POLICY PERIOD:    From:   1st October, 2009
                      To:     1st October, 2010
                      at 12:01AM (Standard Time at YOUR address shown below).

3.  ADDRESS:          210 Park Avenue, Suite 1200, Oklahoma City, Oklahoma 73102
                      9717 East 42nd Street, Suite 104, Tulsa, Oklahoma 74146
                      5808 South Rapp Street, Suite 207, Littleton, Colorado 80120
                      7475 Skillman Street, C Building 102, Dallas, Texas 75231
                      3575 Koger Boulevard, Suite 233, Duluth, Georgia 30096
                      410 Ware Boulevard, Suite 716, Tampa, Florida 33619
                      One LePage Place, Suite 202, Syracuse, New York 13206
                      450 7th Avenue, Suite 936, New York, New York 10123

4.   LIMIT OF LIABILITY
     (INCLUDES COSTS OF DEFENSE):   a)  USD 2,000,000   Each Insured Event
                                    b)  USD 2,000,000   Total Aggregate
                                    c)  USD   250,000   Client Company Each Insured Event
                                    d)  USD 5,000,000   Client Company Total Aggregate
                                    e)  USD   250,000   Multiple Client Companies Each Insured Event

5.   SELF INSURED RETENTION:       a)  USD    25,000   Any One Insured Event
                                   b)  USD    10,000   Client Company Any One Insured Event in
                                                       respect of Client Companies with 15 or less
                                                       employees

                                       USD    25,000   Client Company Any One Insured Event in
                                                       respect of Client Companies with more than 15
                                                       employees

6.   PRIOR KNOWLEDGE DATE:         1st October, 2008

7.   PREMIUM:                      USD 84,000.00

8.   AUTHORIZED REPRESENTATIVES:   Kissel Pesce Hirsch & Wilmer LLP
                                   580 White Plains Road, Tarrytown, New York 10591
                                   Attention:    Jeffrey Hirsch
                                   Telephone:    (914) 750 5933
                                   Facsimile:    (914) 750 5922

Please quote following reference when dealing with our authorised representatives:      1115/NAPI09111970

                                   Application dated                  1st July, 2009
                                   Third Party Questionnaire dated;   30th September, 2009
                                   Wage & Hour Supplement dated;      30th September, 2009

Endorsements attaching hereto:     NMA 1256 – Nuclear Incident Exclusion Clause
                                   NMA 1477 – Radioactive Contamination Exclusion Clause
                                   NMA 2918 – War & Terrorism Exclusion
                                   NMA 1998 – Service of Suit Clause
                                   LMA 5091 – TRIA Endorsement
                                   623AFB00113 – Choice of Law Clause
                                   623AFB00082 – Premium Payment Warranty
                                   LMA3333 – (RE)Insurers Liability Clause
                                   Wage & Hour Enhancement Endorsement – as attached
                                   Beazley Source Endorsement – As attached

Dated in London this 2nd Day of October, 2009

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction:

    (a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Mendes & Mount, LLP, 750 Seventh Avenue, New York, NY 10019-6829, USA, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

24/4/86
NMA1998

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
## NEW & RENEWAL BUSINESS ENDORSEMENT

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

In consideration of an additional premium of {Missing} paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA.  The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2014, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.  The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject.  All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

21/12/2007
LMA5091
Form approved by Lloyd's Market Association

### CHOICE OF LAW

It is hereby understood and agreed by both the Insured and Underwriters that any dispute concerning the interpretation of this Policy shall be governed by the laws of New York, N.Y., U.S.A.

623AFB00113

### PREMIUM PAYMENT WARRANTY

IT IS HEREBY WARRANTED that all premium due to Underwriters under this policy is paid within 45 days from Inception.

Non-receipt by Underwriters of such premium, by midnight (local standard time) on the premium due date, shall render this policy void with effect from Inception.

623AFB00082

## LMA3333 – (RE)INSURERS LIABILITY CLAUSE

### (Re)insurer's liability several not joint

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

### Proportion of liability

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333

## WAGE AND HOUR ENHANCEMENT ENDORSEMENT

In consideration of the premium charged for the policy, it is hereby understood and agreed that:

1.  Notwithstanding Section X, WHAT IS NOT COVERED, Exclusions D., we agree to provide Defense Costs coverage for Wage and Hour Claims.

    For purposes of this endorsement, Wage and Hour Claim shall mean any Claim solely alleging violations of any federal, state or local law governing or related to the payment of wages including the payment of overtime, on-call time, rest periods, minimum wages or the classification of Employees for the purpose of determining Employees' eligibility for compensation under such law(s) (collectively referred to herein as "wage and hour laws").

    Our maximum aggregate LIMIT OF LIABILITY pursuant to this endorsement shall be USD 150,000 and shall only apply to Defense Costs ("the Wage and Hour Limit"). The Wage and Hour Limit shall be part of, and not in addition to, the LIMIT OF LIABILITY identified in Item 4(d) of the Declarations. In no event shall the Wage and Hour Limit apply to Loss other than Defense Costs incurred in connection with Wage and Hour Claims and in no event shall we be obligated to pay more than the Limits of Liability identified in Items 4 (a) - 4 (d) of the Declarations.

    As respects coverage for Claims that allege violations of any Wage and Hour Law and also contain allegations of otherwise covered Insured Events, the USD 150,000 Wage and Hour Limit shall apply to those Defense Costs attributable solely to that portion of the Claim alleging violations of any Wage and Hour Law. Notwithstanding the provision of Section I, WHAT IS COVERED, Defense D., the LIMIT OF LIABILITY stated in Item 4, (d) shall apply to Loss, including Defense Costs, attributable solely to that portion of such Claim alleging the covered Insured Events.

2.  This policy does not cover any Wage and Hour Claim, or that portion of any Claim that alleges violations of any Wage and Hour Law if any Insured who is a principal, partner, officer, director, trustee, in-house counsel, Employee(s) within the HR or Risk Management department or Employee(s) with personnel and risk management responsibilities was aware of the violations of the Wage and Hour Law by actual knowledge prior to the inception date in Item 2 of the Declarations.

3.  This policy does not cover that portion of any Claim:

    a.   alleging violation of a California state or local Wage and Hour Law; or

    b.   which is brought in California alleging violation of any Wage and Hour Law.

4.  In excess of the applicable SELF INSURED RETENTION and subject to the Wage and Hour Limit, you shall bear uninsured and at your own risk Nil % of Defense Costs resulting from any Wage and Hour Claim brought as a class action (whether certified or not) or by multiple claimants or in multiple plaintiff suits arising out of related Insured Events, and our liability shall apply only to the remaining percentage of such Defense Expenses.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

## BEAZLEYSOURCE ENDORSEMENT

This policy includes, at no additional cost, access to BeazleySource, an online risk management resource. BeazleySource provides integrated loss prevention tools for employment related exposures. Features include training on preventing sexual harassment and employee discrimination, updates on employment laws, and articles and checklists on Best Practices to avoid litigation. To access BeazleySource and begin taking advantage of this valuable loss prevention tool, log on to www.beazleysource.com and click *Register Here* on the right side of the screen. Enter the password/pass code: BZ110000OE and follow the prompts from there. (Note: The code has 10 characters and each zero is important.)

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

5/9/11

1  Eric D. Mills
   TIPP & BULEY, P.C.
2  Attorneys at Law
   2200 Brooks St
3  P.O. Box 3778
4  Missoula, MT 59806-3778
   Phone: (406) 549-5186
5
6  Attorney for Plaintiff
7
8        MONTANA FOURTH JUDICIAL DISTRICT COURT,
                  MISSOULA COUNTY
9
                                    | Case No.: DV 10-428
10 SAMANTHA LASORTE,                | Dept. No.: 4
11          Plaintiff,
12       vs.                        | CONSENT TO ENTRY OF
                                    |        JUDGMENT
13 REAL ESTATE CLIENT
   REFERRALS, LLC,
14          Defendant.
15 COMES NOW the parties above named and hereby stipulates as follows:

16 1.      That Plaintiff should be entitled to Judgment against Defendant for his actual

17 and monetary damages in the sum of $210,000 together with interest at the legal

18 rate accruing from the date of filing of the *Complaint* until paid.  Plaintiff shall also

19 receive $2,000.00 upon the signing of this agreement.  The parties stipulate that

20 this Judgment shall not act as a lien upon any property owned by Defendant and

21 Plaintiff hereby disclaims, waives, and releases any lien he may claim on any

22 property of Defendants created by this Judgment.

23 2.      The parties stipulate that Defendant's consent to this Judgment is subject to

24 the terms of a Settlement Agreement, Assignment of Claims, and Covenant Not to

25 Execute entered into between the parties and that, pursuant to that document, this

26 Judgment shall not act as a lien upon any property owned by Defendant. Plaintiff

27 hereby disclaims, waives, and releases any lien or other right she may have to

28

                                    1

EXHIBIT

C

execute on or otherwise enforce this Judgment against Defendant and/or Jeremiah
Thompson.

3.    The parties shall bear their own costs incurred herein.

4.    The parties agree that Plaintiff cannot execute upon any property owned by
Defendant.

5.    Any other claims by or between the parties shall be dismissed with
prejudice.

DATED this _____ day of ~~February~~ *March*, 2011.

_____
Eric D. Mills
Attorney for Plaintiff

_____   3/8/11
Robert Lukes
Attorney for Defendant

2

## SETTLEMENT AGREEMENT AND ASSIGNMENT OF CLAIMS

| | |
|---|---|
| PARTIES: | SAMANTHA LASORTE (hereinafter "Plaintiff") |
| | REAL ESTATE CLIENT REFERRALS, LLC. ("RECR") and JEREMIAH THOMPSON ("THOMPSON") (collectively as "Defendants") |
| DATE OF CASUALTY: | On or about August of 2008 |
| DESCRIPTION OF CASUALTY: | Alleged sexual harassment |
| SETTLEMENT ARRANGEMENT: | Confession of judgment in exchange for a covenant not to execute and assignment of rights |
| CIVIL CAUSE: | *Samantha LaSorte v. Real Estate Client Referrals, LLC,* Missoula County Cause No. DV-10-428 |

1.   Consent to Judgment & Payment

    A.   The undersigned on behalf of RECR, and in consideration for the terms and conditions of this Agreement, hereby agrees to voluntarily enter its Consent Judgment against RECR, a copy of which is attached as Exhibit "A."

    B.   In addition thereto, within ten days of execution of this document by Plaintiff, RECR shall pay to Plaintiff a total of two thousand dollars ($2,000).

2.   Covenant Not to Execute/Assignment of Claims.

    (a)   Plaintiff hereby covenants that he will not levy any execution on, or in any other matter seek at any time to enforce the consent judgment against RECR and/or Jeremiah Thompson.  This covenant does not extend to any effort by the Plaintiff to enforce the consent judgment against any insurer of RECR, either in their own right or as the assignee of RECR.  Plaintiff agrees to include this covenant on any final judgment entered as a matter of public record.

EXHIBIT

D

(b)   RECR hereby assigns all of its rights and obligations arising under Professional Employer Organisations Employment Practices Insurance Claims First Made and Reported Policy No. 1115NAPI08111970 and any other insurance policy from RECR which may provide coverage for Plaintiff's claim. This assignment includes any and all claims against such insurers of those specific policies, including but not limited to, any claims for breach of contract, breach of implied covenant of good faith and fair dealing and violations of the Montana Unfair Claims Practices Act.

3.   Indemnification.

To the extent that Plaintiffs' pursuit of the assigned claims from RECR results in liability or cost to Defendants, the Plaintiffs agree to indemnify and hold Defendants harmless from any and all claims, costs, expenses, losses, fees, liability and causes of action which arise from Plaintiff' prosecution of the assigned claims.

4.   Dealings With Creditors.

(a)   Plaintiffs agree that, as a material condition of this Agreement, that they will not report this judgment to any creditor of Defendants or any credit reporting agency.

(b)   Plaintiffs also agree that the judgment shall not be considered a lien on any real or personal property held by Defendants.  Plaintiffs hereby waive any lien against Thompson's property that might arise under Montana Code Annotated §25-9-301, or any other law, as a result of the judgment.

(c)   Upon final resolution of any claim against an insurer of RECR's which assigned to the Plaintiffs, either through judgment or settlement, Plaintiffs will file as a matter of public record a full satisfaction of judgment by RECR under Montana Code Annotated §25-9-311.

5.   Future Damages.

Inasmuch as the injuries, damages, and losses resulting from the events described herein may not be fully known and may be more numerous or more serious than it is now understood or expected, Plaintiffs agree, as a further consideration of this agreement, that this Agreement applies to any and all injuries, damages and losses resulting from the casualty described herein, even though now unanticipated, unexpected and unknown, as well as any and all injuries, damages and losses which have already developed and which are now known or anticipated.

2

6.    No Additional Claims.

Other than claims assigned under paragraph 2(b) above, the Plaintiff represents that no additional claims are contemplated against any other party potentially liable for the losses, damages, and injuries for which this Agreement is given. In the event Plaintiffs make any additional claim which directly or indirectly results in additional liability exposure to Defendants for the losses, injuries, and damages for which this Agreement is given, Plaintiff covenant and agree to indemnify and save Defendants harmless from all such claims and demands, including reasonable attorneys' fees and all other expenses necessarily incurred.

7.    Disclaimer

The parties have carefully read the foregoing, discussed its legal effect with their attorney, understand the contents thereof, and sign the same of their own free will and accord.   This Release shall be binding upon the parties' heirs, successors, related companies, employees and agents.

8.    Miscellaneous.

(a)   This Agreement may be executed in counterpart and electronic or facsimile signature shall have the same effect as an original signature.

(b)   This Agreement shall be governed and construed under the laws of the state of Montana.

(c)    Although not a confidential agreement per se, the Plaintiff agrees not to go to the press or actively publicize this judgment or settlement in any affirmative manner.

DATED this ____ day of February, 2011.

CAUTION: READ BEFORE SIGNING!

922193

Nainamba LaSorte

Date 2/14/2011

Eric Mills
TIPP & BULEY, P.C.
2200 Brooks
PO Box 3778
Missoula, MT 59806-3778
(Attorney for Plaintiff)

Date 3/1/11

For RECR:

Signature

Date 3. 18. 11

Individual Insured, but only in respect of a Claim arising solely out of his or her capacity as your spouse where such Claim seeks recovery of marital property, community property, jointly held property, or property you transferred to your spouse; provided however, that no coverage is afforded hereunder for any acts that may have been or are alleged to have been committed by such spouse.