IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED
FEB 0 5 2014
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| SAMANTHA LASORTE, | CV 12–87–M–DWM |
| Plaintiff, | |
| vs. | ORDER |
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S SEVERALLY SUBSCRIBING TO POLICY NUMBERS 115NAP108111970 AND 115NAP109111970, | |
| Defendants. | |

## INTRODUCTION

This is a breach of contract case. Plaintiff Samantha Lasorte seeks

judgment against Defendant, Those Certain Underwriters at Lloyd's

("Defendants" or "the Insurer"), for breach of an insurance policy issued by the

Insurer to Plaintiff's employer, Real Estate Client Referrals ("the Employer" or

"the Insured"), against whom Lasorte acquired judgment in an underlying state

court discrimination suit. Defendants have moved for summary judgment. For the

reasons set forth below the motion is denied in part and granted in part. Based on

the existing record, the parties are hereby given notice that summary judgment in

-1-

favor of Plaintiff is likely to be granted under Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant"). Within ten (10) days of the entry of this Order the parties shall submit simultaneous briefs of no more than ten (10) pages in support of or in opposition to granting summary judgment in favor of Plaintiff.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Lasorte filed a sexual discrimination and retaliation suit against her employer Real Estate Client Referrals in underlying litigation before Judges Dusty Deschamps and Karen Townsend in Montana's Fourth Judicial District Court. At the time, the Employer was insured under an Employment Practices Insurance Policy ("the Policy") issued by the Defendants Lloyd's ("the Insurer").[1] The Policy contained a Self Insured Retention ("SIR" in the parties' briefs) provision that required the insured to act as its own insurer for the first $25,000 in costs associated with a claim. The Employer notified the Insurer of the claim and retained defense counsel. The Insurer responded with a letter to the Employer acknowledging the claim was covered by the policy, and expressing approval of the Employer's choice of counsel. The letter then advised the Employer that the

---

[1] While two policies are identified in the case caption, one covering 2008–09, the other covering 2009–10, both parties reference only the first policy in their briefs and no material differences between the language of the two policies are apparent.

$25,000 Self Insured Retention had to be satisfied before the Insurer would be on the hook for any loss or defense cost payments under the Policy.

The Employer resolved the discrimination suit by entering into a stipulated judgment in favor of Lasorte for $210,000, an assignment of claims, and a covenant not to execute. As a part of the settlement agreement, the Employer agreed to payment of $2,000 to Lasorte. It is not clear from the record whether the Employer actually paid those amounts. According to the affidavit of the Employer's counsel, Malin Stearns Johnson, the Employer did not pay any money toward defense counsel's fees.

The Insurer refuses to indemnify the Employer for the stipulated judgment, claiming its duty to pay any loss amount under the Policy was never triggered because the Employer, by failing to pay $25,000 toward the judgement or for defense costs, failed to exhaust the Self Insured Retention. Prior to execution of the stipulated judgment, counsel for the Employer, through its correspondence, gave the Insurer the opportunity to exercise its right to defend and assume defense of the employment discrimination claim. The Insurer chose not to exercise its right to defend.

Lasorte then filed suit against the Insurer in Montana's Fourth Judicial District Court claiming the Insurer breached the terms of the Policy by refusing to

indemnify the Employer for the stipulated judgment. The Defendants removed the case to this Court.

Defendants filed a motion for summary judgment arguing that, as a matter of law, its duties to defend or indemnify the Employer were not triggered until the Employer first paid the entire Self-Insured Retention, which the Employer failed or refused to do. The Defendants look to the following provisions in the Policy to support its argument:

## I.  COVERAGE: WHAT IS COVERED

    A.    We will pay Loss amounts that an Insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. However, the amount we will pay is limited as described in the LIMIT OF LIABILITY and SELF INSURED RETENTION sections of this policy.

. . .

## VII.  HOW COVERAGE LIMITS AND SELF INSURED RETENTIONS ARE APPLIED TO CLAIMS INVOLVING CLIENT COMPANIES

When a Claim is made solely against a Client Company, the Client Company Any One Insured Event amount, as shown in the Declarations, shall apply first, when exhausted the Client Company Each Insured Event amount, as shown in the Declarations, shall apply . . . .

## VIII.  SELF INSURED RETENTION

Our obligations to pay under this policy applies [sic] only to the

-4-

amount of Loss in excess of any Self Insured Retention amount, as shown in the Declarations, and the LIMIT OF LIABILITY will not be reduced by the amount of such Self Insured Retention.

. . .

## DECLARATIONS

5.  SELF INSURED RETENTION

. . .

b)  USD  25,000          Client Company Any One
                         Insured Event in respect of
                         Client Companies with more
                         than 15 employees.

Although the Defendants do not cite them, two policy definitions are

relevant:

## X.  DEFINITIONS

. . .

**D.**  Defense Costs means those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific Claim including attorney fees and expenses, the cost of legal proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the LIMIT OF LIABILITY that applies). We have no obligation to furnish and bonds.

The following are not Defense Costs:

. . .

2. Amounts incurred prior to giving notice to us or our Authorized Representatives, as shown in the Declarations.

. . .

**L.** Loss means damages, judgments, settlements, statutory attorney fees and Defense Costs.

Plaintiff here insists that because the Defendants refused to defend the Employer against her claim in the underlying employment discrimination suit, Defendants are now estopped from denying coverage and are liable for the judgment entered in favor the Plaintiff. Plaintiff invokes the following sections of the Policy to support her arguments:

## I. <u>COVERAGE: WHAT IS COVERED</u>

. . .

C. Defense. We have the right and duty to defend any Claim for an Insured Event made or brought against any Insured to which this policy applies.

. . .

E. Duty to pay. We have the duty to pay any Loss that results from any Claim for an Insured Event made or brought against any Insured to which this policy applies. Our duty to pay ends when the available LIMIT OF LIABILITY has been exhausted. We will not pay more than the applicable LIMIT OF LIABILITY.

We have the duty to pay Defense Costs incurred for the defense of any Claim that is controlled by us. Payment of Defense

> Costs are included in the LIMIT OF LIABILITY, they are not in addition to the LIMIT OF LIABILITY.

Almost as an afterthought, Plaintiff concludes her response brief by arguing "this Court should grant summary judgment in favor of the Plaintiffs for the amounts damages [sic] requested in their Complaints filed herein, as the undisputed material facts demonstrate that the Defendants violated their duty to defend [the Employer] against the Plaintiffs' claims." The Defendants retort that the Plaintiff has not moved for dispositive relief and insist that, even if summary judgment is granted in favor of the Plaintiff, a trial is still necessary to quantify the reasonableness of the stipulated judgment that settled the underlying litigation.

There is an immediate problem. Both parties based their initial arguments on the assumption that Montana law governs. However, the Policy has a choice-of-law clause that states New York law shall govern interpretation of the Policy. Because New York law is the applicable law for interpretation of the Policy, supplemental briefing was ordered regarding application of New York law.

A secondary issue for supplemental briefing was the Employer's solvency. Under New York law, an insurer must defend and indemnify an insolvent insured even if the insured has not exhausted any Self Insured Retention. According to the affidavit of Attorney Stearns Johnson, the Employer told its counsel that it "was

selling off all its assets" and that it would not compensate her for time and expenses. This created the appearance the Employer was insolvent, triggering the request for supplemental briefing on the issue. In the supplemental brief, the Plaintiff claims the Employer was insolvent, but offers only emails indicating that the Employer was either unwilling or unable to pay defense costs to support the claim. The Defendants argued in their supplemental brief that the Employer was not insolvent, relying on the affidavit of Adam C. Covert, the General Manager of the Employer from May, 2003 to March, 2010. The affidavit states that as of March, 2010, the Employer was solvent and able to pay several $25,000 Self-Insured Retention. From the record, it is clear the Employer was not insolvent.

## SUMMARY CONCLUSION

The Defendants' motion for summary judgment is denied because the Policy language requires the Insurer to indemnify once the Self Insured Retention is exhausted and the Self Insured Retention was exhausted by the underlying judgments. Under New York law, the term "exhausted"—as used in policies analogous to the Policy here—is ambiguous and is therefore construed against the Insurer to include settlement by compromise. By this reasoning, the $25,000 Self Insured Retention in the Policy at issue was exhausted when the Plaintiff agreed to the underlying judgment of $210,000 after first tendering the right to defend and

control the disposition of the case to Defendants.

On the other hand, the Plaintiff's argument that the Defendants breached their duty to defend fails. Unless the insured is bankrupt, under New York law this insurer had no duty to defend before the Self Insurance Retention was exhausted. The Employer here was not insolvent. Consequently, the Insurer had no duty to defend, nor is it liable for defense costs incurred prior to the stipulated judgment.

By its refusal to indemnify the claims, Defendants breached the Policy. Consequently their motion for summary judgment is denied. New York law, however, requires insurers to pay only reasonable settlements entered into by an insured after an insurer breaches its duties. Lasorte is not entitled to summary judgment on damages because determining the reasonableness of the stipulated judgment from the litigation below involves genuine disputes of material fact.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.; see also Russell v. Daiichi–Sankyo, Inc.,* 2012 WL 1793226 (D. Mont. May 15, 2012).

## ANALYSIS

An insurance policy with a Self Insured Retention, such as the Policy in this case, is treated like an excess insurance policy. "It is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." *P. Employers Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276-77 (9th Cir. 1998); *see also* Allan D. Windt, 3 Insurance Claims and Disputes § 11:31 (6th ed. 2013). Thus, many of the applicable cases in this area of law deal with excess insurance policies because those policies are analogous to policies with a Self Insured Retention.

-10-

**I.**     **Settlement by compromise constitutes exhaustion of the Self Insured Retention.**

The Policy here shows the Defendants have a duty to pay each loss amount in excess of the Self Insured Retention, but no duty is triggered until the Self Insured Retention is exhausted. The Defendants argue the Self Insured Retention was never exhausted because the Insured Employer never actually paid $25,000 toward defense costs or judgments. The term "exhausted," however, is ambiguous and must be construed against the Insurer to include settlement by compromise. That means the Self Insured Retention was exhausted when the Insured Employer entered into a stipulated judgment in excess of $25,000.

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.,* 472 F.3d 33, 42 (2d Cir. 2006); *see also Vill. of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir. 1995). "When the provisions are unambiguous and understandable, courts are to enforce them as written." *Parks Real Estate,* 472 F.3d at 42 (citing *Goldberger v. Paul Revere Life Ins. Co.,* 165 F.3d 180, 182 (2d Cir. 1999)). "The initial interpretation of a contract is a matter of law for the court

to decide." *Morgan Stanley Grp. Inc. v. New England Ins. Co.,* 225 F.3d 270, 275 (2d Cir. 2000) (quotations omitted).

"Part of this threshold interpretation is the question of whether the terms of the insurance contract are ambiguous." *Parks Real Estate,* 472 F.3d at 42. "It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion." *White v. Continental Cas. Co.,* 9 N.Y.3d 264, 267 (N.Y. 2007) (additional citation, internal quotation marks, and brackets omitted). Conversely, "[a]n ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Parks Real Estate,* 472 F.3d at 42 (internal quotations omitted). "Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity. If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and

against the insurer." *White v. Contl. Cas. Co.*, 9 N.Y.3d at 267 (internal citations and quotations omitted).

Here, the Policy language first identifies the nature of the coverage: "We will pay Loss amounts that an Insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies." (Doc. 1-2 at 7). The next sentence limits the coverage: "However, the amount we will pay is limited as described in the LIMIT OF LIABILITY and SELF INSURED RETENTION sections of this policy." (*Id.*) The Policy provides this definition of "Loss": "Loss means damages, judgments, settlements, statutory attorney fees and Defense Costs." (*Id.* at 16).

There is no dispute that the underlying litigation was a "[c]laim because of an Insured Event to which this policy applies," nor is there any dispute that the defendant in the underlying litigation, the Employer, was "an Insured." The contest here centers on the second sentence, which limits the amount the Insurer will pay according to the terms of the Self Insured Retention section.[2] That provision states: "Our obligations to pay under this policy applies [sic] only to the amount of Loss in excess of any Self Insured Retention amount, as shown in the

---

[2]The Limit of Liability section is not at issue in this case.

Declarations . . ." (*Id.* at 12). This language is precise and clear. The Insurer will pay qualifying judgments, settlements, and defense costs the Insured is legally obligated to pay which are in excess of the Self Insured Retention. Clarification about how the Self Insured Retention works is set forth in the Policy under the section "HOW COVERAGE LIMITS AND SELF INSURED RETENTIONS ARE APPLIED TO CLAIMS INVOLVING CLIENT COMPANIES." That clause states, "When a claim is made solely against a Client Company the Client Company Any One Insured Event amount, as shown in the Declarations, shall apply first, when exhausted the Client Company Each Insured Event amount, as shown in the Declarations, shall apply . . . ." (*Id.* at 12). The Self Insured Retention section of the Declarations lists the Client Company Any One Insured Event amount as $25,000. (*Id.* at 19).

The crux of the Defendants' argument is that the Client Company Any One Insured Event amount (which the Declarations page shows is the Self Insured Retention amount of $25,000) was never exhausted, so the Client Company Each Insured Event amount (which the Declarations page shows is the Policy's Limit of Liability amount of $250,000) did not apply. This contention is contrary to the plain language of the Policy. The policy language that establishes coverage states the Insurer will pay all qualifying "Loss amounts" the Insured is legally obligated

to pay. The Policy then states the amount the Insurer will pay is limited as described by the Self Insured Retention and Limits of Liability sections. The Self Insured Retention limits the amount the Insurer will pay to "the amount of Loss in excess of any Self Insured Retention." The plain meaning of these provisions is that the Insurer is obligated to pay on behalf of the Insured any amount in excess of the Self Insured Retention that the Insured is legally obligated to pay, whether the amount is for defense cost or judgment. In this case there is no question the Insured is legally obligated to pay the amount of the judgments against it, nor is there any question the amount is in excess of the Self Insurance Retention. When the carrier approved of the Employer's choice of counsel, but opted to leave control of the defense and disposition to that firm, it surrendered any argument that the policy does not cover the judgment incurred.

The only language in the Policy that tends to support the Defendants' interpretation of their obligations is the following:

> When a Claim is made solely against a client Company the Client company Any One Insured Event amount [the Self Insured Retention], as shown in the Declarations, shall apply first, *when exhausted* the Client company Each Insured Event amount, as shown in the Declarations, shall apply subject to the LIMIT of LIABILITY.

(*Id*. at 12) (brackets and emphasis added). The Defendants' interpretation rests on the phrase *when exhausted*, which it reads to mean the Insured must actually pay

out the $25,000 amount of the Self Insurance Retention for it to be *exhausted*. The linchpin of this reasoning is that until the Insured has actually paid that amount the Policy's coverage is not triggered.

While that view and interpretation may be a reasonable interpretation of *when exhausted*, it does not stand as exclusive. Words in insurance policies are to be construed using their ordinary and popular meanings. *See* 2 Couch on Ins. § 22:38. When construing an insurance policy, the tests applied are "common speech" and the "reasonable expectation and purpose of the ordinary businessman." *Stoney Run Co. v. Prudential-LMI Com. Ins. Co.*, 47 F.3d 34, 37 (2d Cir. 1995) (citing *Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.*, 457 N.E.2d 761, 764 (N.Y. 1983)). In this case, the ordinary meaning of the language in question is not necessarily helpful. A representative dictionary definition of *exhaust* is "to use up the whole supply or store of: expend or consume entirely." Webster's Third New International Dictionary 796 (2002).

On the other hand, New York law gives guidance to the meaning of *exhausted*. In *Zeig v. Massachusetts Bonding & Insurance Co.*, 23 F.2d 665 (2d Cir. 1928), the defendant insurer issued an excess insurance policy that applied only when all underlying insurance had been "exhausted in payment of claims," and required the plaintiff insured to maintain at least $5,000 in primary insurance.

The plaintiff in fact had three primary policies, each of which had limits of $5,000.

He settled his claims with the primary insurers for $6,000 and then filed a claim

under his excess policy with the defendant, which claim was denied. Judge

Learned Hand's opinion in the case is worth quoting:

> The defendant argues that it was necessary for the plaintiff actually to collect the full amount of the policies for $15,000, in order to "exhaust" that insurance. Such a construction of the policy sued on seems unnecessarily stringent. It is doubtless true that the parties could impose such a condition precedent to liability upon the policy, if they chose to do so. But the defendant had no rational interest in whether the insured collected the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of those policies. To require an absolute collection of the primary insurance to its full limit would in many, if not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which is both convenient and commendable. A result harmful to the insured, and of no rational advantage to the insurer, ought only to be reached when the terms of the contract demand it.
>
> We can see no reason for a construction so burdensome to the insured. Nothing is said about the "collection" of the full amount of the primary insurance. The clause provides only that it be 'exhausted in the payment of claims to the full amount of the expressed limits.' *The claims are paid to the full amount of the policies, if they are settled and discharged, and the primary insurance is thereby exhausted. There is no need of interpreting the word 'payment' as only relating to payment in cash. It often is used as meaning the satisfaction of a claim by compromise, or in other ways.* To render the policy in suit applicable, claims had to be and were satisfied and paid to the full limit of the primary policies. Only such portion of the loss as exceeded, not the cash settlement, but the limits of these policies, is covered by the excess policy.

> We are aware of the fact that there are decisions holding that the words "exhausted in the payment of claims" require collection of the primary policies as a condition precedent to the right to recover excess insurance. We can see nothing in the clause before us to require a construction so burdensome to the insured, and must accordingly reject such an interpretation.
>
> The plaintiff should have been allowed to prove the amount of his loss, and, if that loss was greater than the amount of the expressed limits of the primary insurance, he was entitled to recover the excess to the extent of the policy in suit.

*Zeig*, 23 F.2d at 666 (emphasis added).

The court's reasoning in *Zeig* remains good law in New York. The phrase used in that case, "exhausted in payment of claims," can be reasonably interpreted to include satisfaction of a claim by compromise. The term used in this case, "exhausted," is less precise than the phrase in question in *Zeig*, and more susceptible to different interpretations. Thus, if "exhausted in payment of claims" is ambiguous, the word "exhausted" alone is even more ambiguous. Where there is an ambiguity, it must be construed in favor of the insured and against the insurer. *White*, 9 N.Y.3d at 267. Further, an insurer that issues an excess policy—or, analogously, a policy with a Self Insured Retention—has no rational interest in whether the primary insurance is actually paid out in cash so long as it only has to pay loss amounts it contracted to pay, which is any loss amount in

excess of the primary insurance limits. Whether the party entitled to the amount of the primary insurance or Self Insured Retention limits actually receives it in cash makes no difference to an insurer.

If the insurer intends to make actual payment in cash of the Self Insured Retention a condition precedent to liability on its policy, then it can include specific language to that effect in the policy. As the *Zeig* court noted, "It is doubtless true that the parties could impose such a condition precedent to liability upon the policy, if they chose to do so." Most insurance companies apparently took note of the court's observation and rewrote the policy language to conform to the specific language the court suggested. In almost every case in which *Zeig* has been cited to support the assertion that the term "exhausted" is ambiguous, the deciding court has distinguished *Zeig* on the grounds that the policy language in the case at bar was not ambiguous because it included language to the effect that *exhaustion by actual payment* of the primary policy limits was required before the excess insurance applied. *See Forest Laboratories, Inc. v. Arch Ins. Co.*, 38 Misc. 3d 260, 265-67 (N.Y. Sup. Ct. 2012) (collecting cases).

Here, the policy contains no such language that would resolve the ambiguity inherent in the term "exhausted." It states simply that the Self Insured Retention applies, and "when exhausted," then the limits of the Insurer's obligation as shown

in the Declarations apply. As Judge Hand noted, when "exhausted" is not defined in a policy, it is reasonable to interpret the term to include settlement by comprise. *Zeig*, 23 F.2d at 666. There appears to be no authority in New York law undermining this rationale.

The phrase "when exhausted" is ambiguous so it is construed against the Insurer. In this case, as in *Zeig*, it includes settlement by compromise. This view is bolstered by its consonance with the language in the policy stating "[w]e will pay Loss amounts that an Insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies . . . . Our obligations to pay under this policy applies [sic] only to the amount of Loss in excess of any Self Insured Retention amount, as shown in the Declarations . . . ." (Doc. 1-2 at 7, 12). The Insurer defines its obligation as the payment of a loss amount the Insured is legally obligated to pay, to the extent the loss amount is in excess of the Self Insured Retention. It makes no mention of whether or not the Insured must actually pay the Self Insured Retention amount in cash before the Insurer's obligation is triggered. The Insurer's obligation to pay loss amounts arose in this case when the Insured Employer became legally obligated to pay a loss amount in excess of $25,000. That occurred when the Employer settled the Plaintiff's claims against it by entering into the stipulated judgment in the underlying litigation. The

insurer had at least two avenues open to it to avoid the current conundrum. First, it could have taken control of the defense. Second, the language of the policy could have been written to require actual cash payment of the retained sum before the indemnity provision kicked in.

## II. The Insurer had no duty to defend prior to exhaustion of the Self Insured Retention.

### A. The Insurer's duty to defend was not triggered prior to exhaustion of the Self Insured Retention because the insured was not insolvent.

When an insured is insolvent, New York law requires the insurer to defend and indemnify the insured even if the policy in question requires exhaustion of the Self Insured Retention by actual payment of claims and defense costs. "New York law requires that insurance policies include '[a] provision that the insolvency or bankruptcy of the person insured, or the insolvency of his estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract.'" *Admiral Ins. Co. v. Grace Industries, Inc.*, 409 B.R. 275, 281 (E.D.N.Y. 2009) (quoting N.Y. Ins. Law § 3420(a)(1) (2013)). The Policy in this case includes such a provision. (Doc. 1-2 at 14). Were the Insured insolvent, the Insurer's duty to defend would be triggered prior to exhaustion of the Self Insured Retention. *See*

*Am. Safety Indem. Co. v. Off. Comm. of Unsecured Creditors*, 05 CV 5877 ARR, 2006 WL 2850612 (E.D.N.Y. 2006) (affirming bankruptcy court's order requiring insurer to defend and indemnify all personal injury actions pending against the debtor, but only to the extent that the claims exceeded the self-insured retention and without regard to whether the self-insured retention had been paid.); *Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275, 280 (E.D.N.Y. 2009) (relying on N.Y. Ins. Law § 3420(a)(1) to affirm bankruptcy court's order determining insurer was not relieved of its obligations to insured under the policy to cover the costs of claims in excess of the Self Insured Retention, regardless of whether the claimant received payment of that portion of the claim awarded which fell within the Self Insurance Retention).

Lasorte's argument that the Insured Employer was insolvent fails because the facts in the record do not show the Insured Employer was insolvent, only that it refused to pay its attorneys. The pleadings include an affidavit with the Motion for Summary Judgment that raises the prospect the Insured in this case was insolvent. The affidavit states that the Insured informed its defense counsel in the underlying litigation that "it was selling off all its assets" and would not pay defense counsel's fees. (Doc. 12-1 at 5). To prove the Insured Employer's insolvency, the Plaintiff offered a series of emails from the Insured Employer's

counsel in the underlying employment litigation indicating the Employer did not pay its legal bills. (Doc. 18-1.) The Defendants on the other hand set forth the affidavit of the former general manager of the Employer indicating the Employer was solvent in the relevant time period and able to pay "several" $25,000 Self Insured Retentions. (Doc. 17-1 at 3.) The Defendants also offered a state court judgment indicating the Employer's net worth must be at least $480,000 because the evidence in front of the state court indicated the Employer sold assets in that amount. (Doc. 17-2 at 5.) The state court judgment is unhelpful because net worth is the sum of all assets and liabilities, and the court in that case does not appear to have had any information in front of it about the Employer's liabilities. Thus, the state court could not have known the Employer's net worth, only that it recently received gross income in the amount of $480,000 from the sale of assets that was the subject of the litigation before it. Regardless, the emails advanced by the Plaintiff fail to show insolvency. Viewed in the light most favorable to the Plaintiff, they show only that the Employer refused to pay its attorneys. There is a failure of fact in the record to show the Employer was insolvent.

## B. The Insurer's duty to defend was not otherwise triggered prior to exhaustion of the Self Insured Retention.

Plaintiff also argues that, under the language of the Policy, the Insurer's duty to defend was triggered at the initiation of the underlying litigation. Plaintiff relies exclusively on the language in the policy stating: "[w]e have the right and duty to defend any Claim for an Insured Event made or brought against any Insured to which this policy applies." Plaintiff, in effect, asks that this language be read in isolation. New York law requires courts to construe the insurance policy in a way that "affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Consol. Edison Co. of New York, Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 222 (N.Y. 2002) (citation omitted). The heart of the Policy is the language explaining coverage:

> We will pay Loss amounts that an Insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. However, the amount we will pay is limited as described in the LIMIT OF LIABILITY and SELF INSURED RETENTION sections of this policy.

(Doc. 1-2 at 7.) "Loss amounts" is defined in the policy to include defense costs. (*Id.* at 16.) The policy further explains, "Our obligations to pay under this policy applies [sic] only to the amount of Loss in excess of any Self Insured Retention amount, as shown in the Declarations . . . ." (*Id.* at 12). Since the definition of

-24-

"Loss" includes defense costs, the Insurer's duty to defend is not triggered until the Self Insured Retention is exhausted. Even if the Policy is construed according to the Plaintiff's interpretation, it still leaves the Self Insured Retention provisions without effect regarding defense costs.

The Plaintiff essentially asks the Court to treat the Self Insured Retention in the Policy as a deductible. This is contrary to New York law.

> A SIR [Self Insured Retention] differs from a deductible in that a SIR is an amount that an insured retains and covers before insurance coverage begins to apply. Once a SIR is satisfied, the insurer is then liable for amounts exceeding the retention, less any agreed deductible .... Policyholders frequently employ SIRs to forego increased premiums .... In contrast, a deductible is an amount that an insurer subtracts from a policy amount, reducing the amount of insurance. With the deductible, the insurer has the liability and defense risk from the beginning and then deducts the deductible amount from the insured coverage.

*In re September 11th Liab. Ins. Coverage Cases*, 333 F. Supp. 2d 111, 124 (S.D.N.Y. 2004) (citing Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 13.13[a] (12th ed. vol.2, 2004)). When there is a deductible, as opposed to self retention, the duty to defend is triggered as soon as a covered claim is made against the insured. A policy with a Self Insured Retention, on the other hand, is designed to absolve the insurer of any financial obligation, whether it falls under the duty to indemnify or the duty to defend, until the Self

Insured Retention is exhausted. It acts like an excess policy where the insured acts as its own primary insurer. *P. Employers Ins. Co.*, 144 F.3d at 1276-77. The primary insurer has the duty to defend prior to exhaustion of the primary insurance, which in this case is the Self Insured Retention. "The word 'primary' is used . . . in the field of excess insurance to distinguish coverage which attaches immediately upon the happening of an occurrence, from excess coverage, which attaches only after a predetermined amount of 'primary' coverage has been exhausted." *Am. Home Assurance Co. v. Republic Ins. Co.,* 984 F.2d 76, 77 (2d Cir. 1993). "In the context of primary and excess insurance, . . . a primary insurer has the primary duty to defend." *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co., Inc.,* 16 N.Y.3d 257, 265 (N.Y. 2011) (internal quotation marks and citations omitted). "Although an excess insurance carrier may elect to participate in an insured's defense to protect its interest, it has no obligation to do so." *Id.* The intention behind a Self Insured Retention is for the insurer to have no financial exposure for amounts below the Self Insured Retention. In return, the policyholder pays a reduced premium. The risk to the carrier in opting out of controlling the defense is that it will find itself obligated to pay under other policy provisions. Imposing a duty to defend on the Insurer prior to exhaustion of the Self Insured Retention would transform the Self Insured Retention into a

deductible and defeat the parties' intentions with regard to the Self Insured Retention. *See In re September 11th Liab. Ins. Coverage Cases*, 458 F. Supp. 2d at 119 (noting that "judicial rewriting of the bargained-for insurance policy" would impose on the insurer an obligation it expressly rejected and would run directly counter to the admonition that, in contract interpretation, "the intentions of the parties should control").

The Plaintiff's claim that the duty to defend was triggered upon initiation of the underlying litigation fails. The Insurer had no duty to defend prior to exhaustion of the Self Insured Retention. Again, the distinction is between the duty to defend and the duty to indemnify, deductible as opposed to self retention.

## III. The Plaintiff is likely entitled to summary judgment on the issue of liability only.

The undisputed facts in the record show the Defendants breached the insurance contract as a matter of law. Accordingly, summary judgment in favor of the Plaintiff is appropriate as to liability. However, the Plaintiff has not moved for summary judgment. Furthermore, the measure of damages involves factual disputes.

New York law requires settlements between an insured and third party to be reasonable and made in good faith. Once an insurer denies coverage, the insured

may settle with third parties without prejudicing its rights against the insurer, so long as the settlement is made "in good faith." *Societe Generale Energie Corp. v. New York Marine and Gen. Ins. Co.*, 368 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) (citing *Amalgamet Inc. v. Lloyd's*, 724 F. Supp. 1132, 1141 (S.D.N.Y. 1989)). The insured need not show "actual liability to the party with whom it has settled so long as a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured]." *Id.* (brackets in original) (citing *Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082 (2d Cir.1986)).

Contrary to the Plaintiff's position, the insurer is not bound to indemnify for any settlement reached. The Plaintiff must show the settlement or consent judgment is reasonable:

> Although [the insured] is not required to obtain [the insurer's] approval before settling, it does not automatically follow that [the insurer] is bound to indemnify [the insured] for any settlement of personal injury claims it enters into. [The plaintiff] argues that because [the insurer] allegedly refused to defend and/or pay the claims, it is obligated to indemnify [the insured] for any settlements it reaches. This contention is insupportable. Even when an insurer breaches a duty to defend, the insurer need not indemnify its insured for a settlement which is . . . unreasonable.

*In re Prudential Lines, Inc.*, 170 B.R. 222, 246 (S.D.N.Y. 1994) (citing *George Muhlstock v. Am. Home Assurance*, 117 A.D.2d 117 (N.Y. App. Div. 1st Dep't. 1986)). The court in *Prudential Lines* allowed further discovery so the insurer could determine the reasonable value of the plaintiff's claims. There is very little evidence currently in the record upon which a fact finder could base a determination of reasonableness. It is not clear what other evidence the parties have shared in the discovery process that would address the question of the settlement's reasonableness.

## CONCLUSION

The Defendants' Motion for Summary Judgment is denied in part and granted in part. The Defendants' argument that they have no duty to indemnify prior to exhaustion of the Self Insured Retention is correct. However, its contention that exhaustion happens only upon actual payments of claims and defense costs is not well taken under New York law. The term "exhausted" is ambiguous and is construed against the Insurer to include settlement by compromise. The Self Insured Retention was exhausted and the Defendants' duty to indemnify was triggered upon entry of the stipulated judgment in the underlying litigation. Summary judgment in favor of the Plaintiff is likely on the claim that the Insurer breached its duty to indemnify but not its duty to defend.

IT IS ORDERED that Defendants' Motion for Summary Judgment, (Doc. 10), is DENIED IN PART AND GRANTED IN PART.

IT IS FURTHER ORDERED that the parties submit brief of no more than ten (10) pages on the question of summary judgment in favor of Plaintiff.

IT IS FURTHER ORDERED that the parties shall advise the Court of when the damage case can be tried, within the next six months.

DATED this _____ day of February, 2014.

_____
Donald W. Molloy, District Judge
United States District Court